# The State of Texas Ex Rel. Southwestern Gas and Electric Company Et Al v. Upshur Rural Electric Co-operative Corporation Et Al.

No. A-5884. Decided February 6, 1957.
Rehearing overruled March 13, 1957.
(298 S.W. 2d Series 805).

634

*John Ben Shepperd,* Attorney General, *Burnell Waldrep,* *William W. Guild,* and *Will D. Davis,* Assistants Attorney General, for the State, *George Prendegast,* of Marshall, *Arnold &* *Arnold* and *Richard L. Arnold* all of Texarkana, *Looney, Clark* *& Moorhead, Everett L. Looney, Edward Clark,* and *R. Dean* *Moorhead,* all of Austin, for Southwestern Gas and Electric Company, petitioners.

The errors sought to be corrected are that the co-op may continue to operate its lines and facilities which were constructed in the rural area after a portion of such area has been annexed to a town having 1,500 inhabitants; that the statute is construed to mean that once a co-op has legally entered an area, it can continue to operate in such area even if a city has annexed a portion of such area and, in not construing the statute as limiting service to those who were lawful members at the time of the annexation, and in holding that the consent of the co-op to cooperate was unnecessary for ten years from the time of annexation and inferring that article 1436a, Vernon's Texas Civil Statutes, was pertinent to this case. Lyons-Thomas Hardware Co. v. Perry Stove Mfg. Co., 86 Texas 143, 24 S.W. 16; Farmers Elec. Co-op Corp. v. Arkansas Power & Light Co., 220 Ark. 652, 249 S.W. 2d 837; City of Mason v. West Texas Utilities Co., 150 Texas 18, 237 S.W. 2d 273.

*Dan Moody,* and *William A. Brown,* both of Austin, *Edwin* *M. Fulton,* of Gilmer, for respondents, Upshur Rural Electric Co-operative, and others.

In reply to contentions of petitioners, cite Northside Ry. Co. v. Worthington, 88 Texas 562, 30 S.W. 1055, 1057; State v. San Antonio Public Service Co., Texas Com. App., 69 S.W. 2d 38; Comanche Cotton Oil Co. v. Browne, Texas Com. App., 99 Texas 661, 92 S.W. 450.

MR. CHIEF JUSTICE HICKMAN delivered the opinion of the Court.

By ordinances enacted in 1949, 1951, and 1953 the City of Gilmer annexed certain adjacent territory within which there were approximately twenty-five members of Upshur Rural Electric Co-operative Corporation, hereinafter referred to as Upshur Cooperative or as the Cooperative, who were receiving electric energy therefrom. In 1952 the City of Gilmer granted to Southwestern Gas and Electric Company, hereinafter referred to as Southwestern, a thirty-year franchise authorizing it to sell, distribute, and transmit electric energy within the city, and it is now maintaining an electric system therein. Under prior franchises of a similar nature it has maintained such a system in Gilmer for many years. In 1954 the City Council of Gilmer granted a franchise to Upshur Cooperative which, by its terms, authorized it to sell and distribute electric energy and power to any residents in areas theretofore or thereafter annexed to the city. Pursuant to that franchise the Cooperative is claiming the right to service the residents in the annexed areas, regardless of whether it was servicing them when the areas in which they reside were annexed.

Upshur Cooperative was organized under the provisions of an Act of the 45th Legislature, 1937, Chapter 86, being Article 1528b of Vernon's Texas Annotated Civil Statutes, known as the Electric Cooperative Corporation Act, and commonly referred to as the "ECC Act." The Act will be referred to in this opinion either as Article 1528b or as the ECC Act.

Southwestern is a Delaware corporation with a permit to do business in Texas, and is engaged in the business of generating, transmitting, selling, and distributing electric energy in various cities in the State. The City of Gilmer is and at all relevant times has been an incorporated city, with a population in excess of fifteen hundred.

This is an action brought in behalf of the State of Texas by the Attorney General upon the relation of Southwestern and W. H. Webb, a resident of the City of Gilmer, for an injunction

restraining Upshur Cooperative from distributing electric energy within the City of Gilmer and for a declaratory judgment construing Article 1528b. The trial court held that the Cooperative was authorized to continue serving its members even though the area in which they had been served had been annexed to the City of Gilmer, but it was enjoined from serving persons in the City of Gilmer, including persons in the annexed areas, who were not members thereof at the time of the annexation. The Court of Civil Appeals affirmed the trial court's judgment in part and reversed and rendered it in part, holding "the statute is construed to mean that once a coop has legally entered an area it can continue to operate in such area even if a city has annexed a portion of such area and that it can service those in the annexed area who desire such service." 289 S.W. 2d 819.

We are aided in our understanding of Article 1528b by referring to an Act of Congress known as the Rural Electrification Act of 1936, 7 U.S.C.A., Sec. 901 et seq. That Act authorizes the lending of large sums of money at a very low rate of interest for a term of thirty-five years for the purpose of "the furnishing of electric energy to persons in rural areas who are not receiving central station service." The term "rural area" is defined in that Act as "any area of the United States not included within the boundaries of any city, village, or borough having a population in excess of fifteen hundred inhabitants."

Following the enactment of that legislation many states implemented it by legislation designed to take advantage of the availability of Federal funds for rural electrification by enacting appropriate legislation. At the first session of our Legislature following the passage of the Federal statute, Article 1528b was enacted. The provisions of that Article deemed decisive of the legislative intent in its enactment follow:

"DEFINITIONS.

"Sec. 2. In this Act, unless context otherwise requires:

* * * *

"3. 'Member' means the incorporators of a corporation and each person thereafter lawfully admitted to membership therein;

* * * *

"(8) 'Rural Area' means any area not included within the boundaries of any incorporated or unincorporated city, town,

village, or borough, having a population in excess of fifteen hundred (1,500) inhabitants, and includes both the farm and non-farm population thereof.

## "PURPOSE.

"Sec. 3.   Cooperative, non-profit, membership corporations may be organized under this Act for the purpose of engaging in rural electrification by any one or more of the following methods:

"(1)   The furnishing of electric energy to persons in rural areas who are not receiving central station service:

## "POWERS OF CORPORATION.

"Sec. 4.   Each corporation shall have power:

"(4)   To generate, manufacture, purchase, acquire, and accumulate electric energy and to transmit, distribute, sell, furnish, and dispose of such electricity energy to its members only. * * *.

"(5)   To assist its members only to wire their premises and install therein electrical and plumbing fixtures, machinery, * * *.

## "QUALIFICATION OF MEMBERS.

"Sec. 12.   All persons in rural areas proposed to be served by a corporation, who are not receiving central station service, shall be eligible to membership in a corporation."

## "CERTIFICATE OF MEMBERSHIP.

"Sec. 16.   * * * Memberships in the corporation and the certificates shall be nontransferable. The certificate of membership shall be surrendered to the corporation upon the resignation, expulsion, or death of the member."

## "EXEMPTION FROM EXCISE TAXES—LICENSE FEE.

"Sec. 30.   Corporations formed hereunder shall pay annually, on or before May first, to the Secretary of State, a license fee of Ten Dollars ($10) and such corporations shall be exempt from all other excise taxes of whatsoever kind or nature."

■ It will be observed that the rural area and central station service limitations and the definition of rural area in our ECC

Act follow the pattern of the Federal Rural Electrification Act of 1936. The undoubted purpose of the ECC Act was to authorize the formation of cooperatives to make electric current available to rural areas. Whatever powers cooperatives possess are derived from, and therefore measured by, the Act which created them. To our minds that Act places these definite restrictions upon their powers: (1) A cooperative may serve its members only. (2) Only persons who are not receiving central station service, and who live in a rural area, i.e., an area not included in a city, town, or village having in excess of 1,500 inhabitants, are qualified to become members. As an added emphasis of the fact that membership in cooperatives is strictly limited, the Act provides that a certificate of membership is non-transferable. It seems clear to us that since inhabitants of the City of Gilmer do not live in a rural area they are not qualified to become members of the cooperative. That is true of those residing within as well as those residing without the annexed area. This conclusion is in harmony with the adjudicated cases construing almost identical statutes. Farmers Electric Cooperatives Corp. v. Arkansas Power and Light Co., 220 Ark. 652, 249 S.W. 2d 837; City of Moultrie v. Colquitt County Rural Electric Co., 211 Ga. 842, 89 S.E. 2d 657; Arkansas Electric Cooperative Corp. v. Arkansas-Missouri Power Co., 221 Ark. 638, 225 S.W. 2d 674.

■ A large number of cooperatives intervened in this case in the trial court, making common cause with Upshur Cooperative, and a number of briefs by amici curiae have been received by this court supporting the application of the State and Southwestern. With cooperatives, which admittedly have been a great boon to persons residing in rural areas, arrayed on one side and public utilities on the other, it was not surprising to discover that extraneous matters have crept into the case. We cannot, as a court, be concerned in this case with questions of public policy. That is a matter for the Legislature. Our duty is to interpret the language of the ECC Act. Considering it as a whole, we cannot see how statutory language could be more explicit. It provides that in order to be entitled to the benefits conferred by cooperatives one must be a member thereof, and that to become a member one must reside in a rural area, as defined by the Act. We can ascribe to that language no other meaning than that inhabitants of a city, town, or village having a population in excess of 1,500 inhabitants cannot become members of a cooperative, and therefore cannot be serviced thereby.

■ The question which we have experienced most difficulty in

deciding is whether the Cooperative may continue to service those persons who now reside in areas annexed to the City of Gilmer who were lawful members of the Cooperative at the time such areas were annexed to the city. The trial court held that it has that right. The cases above cited, particularly the cases from the Supreme Court of Arkansas, deny that right. While we recognize that the Act is susceptible of the construction placed upon it by the Arkansas court, still we are constrained to agree with the trial court that lawful membership once acquired is not terminated by annexation by a city of the area in which the member resides. The Act provides that membership is terminated by the resignation, expulsion, or death of the member. There is no provision that it is terminated by annexation. Since members retain that status after annexation, and since the Cooperative is expressly authorized to supply electric energy to its members, it is our view that it is authorized to continue that service to them after annexation.

■ We turn now to a consideration of the contentions of Upshur Cooperative. It recognizes that the primary purpose of the rural electrification program was to make electric current available in rural areas, but argues that once organized there are no limitations on the powers of cooperatives in carrying out their purposes. It is pointed out that Section 12 does not provide that only persons named therein shall be eligible for membership, and that it therefore places no limitation on persons who become members. We cannot accept that reasoning. That provision was not placed in the Act to make sure that persons who reside in rural areas and who are not receiving central station service will be eligible for membership along with all others. It could hardly be true that the Act was passed to prevent discrimination against persons in rural areas. That section prescribes the qualifications of members and necessarily excludes persons not possessing qualifications therein prescribed.

Section 6(a), Subsection (7), of the Act provides that the "terms and conditions" upon which persons may be admitted to and retain membership in a cooperative may be stated in the articles of incorporation or in the by-laws. The Cooperative insists that no limitation as to who may be admitted to membership is expressed in the Act, and that Section 6(a) leaves the matter to the charter and bylaws. If the statute places a limitation on who may become members, as we hold above, the argument has no premise upon which to stand. Admittedly, the charter and by-laws cannot contain provisions inconsistent with the statute. The provision under review deals with "terms

and conditions," and not with qualifications for admission to membership. Such "terms and conditions" may include many incidental matters, such as a required deposit, but not the qualifications of members.

The Cooperative recognizes that authorities from other States cited above support the construction which we have given the Act under review, but contend that those cases should not be followed because almost every State except Texas has created a utility commission which regulates rates and grants exclusive territories to utilities. We are unable to distinguish the cases on that ground. There is nothing in the opinions in those cases which indicates that they were influenced by such considerations. The cases most certainly in point are those from the Supreme Court of Arkansas. That court merely construed the plain language of the ECC Act of that State, which is substantially the same as our Act, and based its decision upon the provisions thereof.

■ Much is written in the briefs on the question of monopoly. In our view that question is not relevant to any issue in this case. Under the Constitution and statutes of this State a city cannot grant an exclusive franchise to any utility. Constitution, Article I, Sec. 26; Article 7428a, Vernon's Annotated Texas Civil Statutes. The City of Gilmer has not undertaken to grant an exclusive franchise to Southwestern. It can grant a franchise to any other utility or can itself establish a municipal electric system. Our question is that of the power of cooperatives under our ECC Act, and to deny them the power to invade cities and serve electric current to all who may apply therefor is not to create a monopoly.

Finally, it is argued that Article 1436a, Vernon's Annotated Texas Civil Statutes, expressly confers authority upon cooperatives to operate in cities and towns. That Article reads in part as follows:

"In the event a State highway or county road on which lines have been built passes through or into an unincorporated city or town, which thereafter becomes an incorporated city or town, the corporation owning such lines shall continue to have the right to build, maintain and operate its lines along, across, upon and over the roads and streets within the corporate limits of such city or town for a period of ten (10) years from and after the date of such incorporation, * * *."

There is no conflict between that provision or any other provision of Article 1436a and Article 1528b. They do not deal with the same subject matter. Article 1436a deals only with the right of corporations, including cooperatives, to build, maintain, and operate lines along highways and streets, but does not at all attempt to enlarge the powers of cooperatives or other corporations. The Act no more enlarges the powers of Upshur Cooperative than it does those of Southwestern, and it would hardly be argued that Southwestern was granted additional powers by that Act. Its powers are derived from the statutes under which it was created, just as the powers of Upshur Cooperative are derived from Article 1528b. We find no language in Article 1436a which has the effect of enlarging those powers. In passing, we observe that under our holding above Upshur Cooperative may continue to serve its members who now reside in the annexed areas of the City of Gilmer. It follows, of course, that its right to the use of the streets for that purpose is not denied by us.

It is our view that the trial court correctly construed our ECC Act, and accordingly the judgment of the Court of Civil Appeals is reversed and that of the trial court is affirmed.

Associated Justice Garwood not sitting.

Opinion delivered February 6, 1957.

Rehearing overruled March 13, 1957.