GARDNER C. WAITE, Appellant, v. JOHN J. HOLMES, as State Auditor of the State of Montana, etc., et al., Respondents.

No. 9569.

Submitted December 2, 1957. Decided June 25, 1958.

327 Pac. (2d) 399.

Loble & Picotte, Helena, Gene A. Picotte and Henry Loble, Helena, argued orally, for appellant.

Forrest H. Anderson, Atty. Gen., C. W. Leaphart, Jr. Helena, Vernon Hoven, Plentywood, Kline & Langen, Glasgow, Vernon Hoven, Plentywood, and John Marriott Kline, Glasgow, argued orally, for respondents.

MR. CHIEF JUSTICE HARRISON:

This is an appeal from a judgment granting the defendants' motion for judgment on the pleadings and denying relief prayed for by the plaintiff.

The plaintiff in this action is Gardner C. Waite, a licensed insurance agent in this state. Defendants are John J. Holmes, as State Auditor of the State of Montana, and, *ex officio*, the Commissioner of Insurance, hereafter referred to as Holmes, and Saskatchewan Guarantee and Fidelity Company, Ltd., hereafter referred to as defendant corporation.

The plaintiff alleged in his complaint that: 1. He is a resident and citizen of the State of Montana, and is duly licensed

under the laws of Montana, and has as his business, for profit, the transaction of insurance business in fire and allied lines within Montana as agent for various insurance companies both domestic and foreign, which said companies are duly licensed under the laws of Montana to do such insurance business therein. The plaintiff is compensated in the course of his business on a commission basis, according to the amount of insurance business obtained by him for such companies.

2. The defendant, is a purported insurance corporation of the province of Saskatchewan, Canada;

3. The defendant, John J. Holmes, is the State Auditor of Montana, and ex officio, the Commissioner of Insurance;

4. Prior to November 1, 1949, the defendant corporation was a private insurance corporation, duly organized and existing under the laws of the province of Saskatchewan, Canada;

5. On November 1, 1949, or thereabouts, the Crown of the British Commonwealth of Nations, in the right of the Province of Saskatchewan, became, and ever since has been the sole owner of said Saskatchewan Company, and the sole operator and manager thereof. Ever since the last mentioned date, said Saskatchewan Company has been, in truth and in fact, although not nominally, a branch and arm of and an integral, organic part of and identical with the government of the province of Saskatchewan; alleging that, it is indeed, a department of the Satkatchewan government, and all of its business and affairs are conducted by and are functions of that government. The government of Saskatchewan does a general insurance business in the Province of Saskatchewan in the name of said Saskatchewan Company, making, writing, and selling all types of insurance in Saskatchewan except life insurance;

6. On November 14, 1953, Holmes, acting in his official capacity of State Insurance Commissioner and purporting to act pursuant to sections 40-1302 and 40-1303, R.C.M. 1947, issued to the defendant, a supposed license as a foreign insurance corporation to do business within the State of Montana in fire

and allied lines of insurance, as those lines are designated in subdivision 1 of section 40-1409, R.C.M. 1947;

7. Since the issuance of said supposed license on November 14, 1953, the defendant has conducted insurance business within the State of Montana in fire and allied lines, in competition with the plaintiff; and

8. Plaintiff then prays that the license granted by Holmes to the defendant corporation be declared void, and of no effect whatsoever upon the grounds that it violates section 11, article XV, of the Montana Constitution and section 40-1422, R.C.M. 1947, because domestic companies of like character are forbidden by the provisions of section 26, article V and section 1, article XIII of the Montana Constitution to enjoy the advantages of being chartered, owned, operated, and financed by a government, under special or local law, as is the defendant; that it violates section 9, article XV, because by virtue of government ownership the defendant corporation would be permitted to engage in destructive competition with the plaintiff, destroy his. business and disrupt the general economy of the State of Montana; that the negotiations carried on between Holmes and the defendant corporation fall within the proscription of section 10, clauses 1 and 3, article I of the United States Constitution, enjoining the states from entering into any treaty, agreement or compact with a foreign nation.

On April 16, 1954, Holmes filed a motion to strike and a general demurrer to the complaint which were subsequently overruled by the district court.

On September 7 the defendant filed its special and general demurrer which was overruled, subsequent to which both Holmes and the defendant corporation filed their separate answers.

Then, on December 17, the defendant corporation and Holmes filed a joint motion for judgment on the pleadings on the following grounds: (1) That plaintiff was not a proper party palintiff to bring an action to cancel or declare null and void a license of a foreign insurance company to do business in the State of Montana; (2) that plaintiff did not have sufficient in-

terest in the outcome of this lawsuit to be a proper party to bring the action; (3) that plaintiff had not pursued his administrative remedies, which as a matter of law must be exhausted as a condition precedent to bringing this action; and (4) that from the pleadings there were no factual issues before this court.

On March 7, 1955, a hearing was held on the motion for judgment on the pleadings, and on April 8 the court filed its order granting the motion, and entered judgment on the pleadings in favor of the defendants. The grounds for sustaining the motion were stated in the court's order: (1) "That the plaintiff is not a proper party to bring an action to cancel or declare null and void a license of a foreign insurance company to do business in the State of Montana;"

(2) "That, as shown by the pleadings in this action, the plaintiff does not have sufficient interest in the outcome of this law suit to be a proper party to bring the action."

From this judgment the plaintiff has perfected this appeal.

Since this is an appeal from a judgment on the pleadings, a summary of the rules applicable to such a judgment is necessary to properly frame the issues.

In Mihelich v. Butte Electric Ry. Co., 85 Mont. 604, 617, 281 Pac. 540, 546, this court said "the motion for judgment on the pleadings is, in effect, a demurrer to the sufficiency of the complaint. However, on such a belated attack the pleading should not be held insufficient unless clearly bad, nor if there is reasonable doubt as to such sufficiency. Equity Co-op. Ass'n v. Equity Co-op. Milling Co., 63 Mont. 26, 206 Pac. 349; Samuell v. Moore Mercantile Co., 62 Mont. 232, 204 Pac. 376."

And, as this court held in Harri v. Isaac, 111 Mont. 152, 156, 107 Pac. (2d) 137, 139:

"It is elementary that judgment on the pleadings is not warranted if the allegations of the complaint, liberally construed, state a cause of action on any theory." To the same effect see 71 C.J.S. Pleading, section 426, pages 866, 868; Patterson v. Pacific Indemnity Co., 119 Cal. App. 203, 6 Pac. (2d) 102, 103, 104.

We now consider the first issue presented upon this appeal —whether or not plaintiff is the proper party to have cancelled and declared null and void the license of a foreign insurance company.

As stated in his main brief and reply brief, the plaintiff bases his contention that he is the proper party to bring this action on the basis that he is a "resident and citizen of Montana, and *is* * * * *duly licensed* * * * *and has as his business, for profit, the* * * * *transaction of insurance business* * * * *as agent* * * * *of various insurance companies,"* who are licensed in Montana in competition with the defendant corporation; that the unlawful action of Holmes in issuing the defendant corporation a license to enter into insurance business in Montana, in competition with the plaintiff, is destructive of plaintiff's business, which in effect gives him the right to bring this action. Emphasis supplied.

It is evident that plaintiff predicates his right to sue upon his membership in the "fraternity" of insurance agents, who must compete with the wares of other insurance companies with whom they have no agency. Plaintiff alleges he has a paid-up membership in his "fraternity" by virtue of the license fees he has paid the State of Montana.

It would appear from the gravamen of plaintiff's complaint and the content of his briefs that basically, he is bringing suit to enjoin competition from one whose advent into competition with himself is based upon a void license—one unlawfully issued.

Stated in the form of an interrogatory, plaintiff's proposition may be phrased: Does plaintiff have any right to enjoin competition which stems from a competitor operating under a void license or franchise, or a right to have such competitor's license cancelled or revoked?

Thus it becomes amply apparent that whether the void license is issued as alleged, to a foreign government, a domestic corporation or a natural person, is unimportant, since plaintiff must, as he contends, base his cause of action upon his alleged property right to be free from unlicensed competition.

518

While Alabama Power Co. v. Ickes, 302 U.S. 464, 58 S. Ct. 300, 82 L. Ed. 374, and Tennessee Electric Power Co. v. Tennessee Valley Authority, 306 U.S. 118, 59 S. Ct. 366, 83 L. Ed. 543, relied upon by the district court in making its order in favor of defendants, are distinguishable from the instant case in some respects, nevertheless, certain statements contained in those opinions will aid this court in properly framing the problem presented.

In Alabama Power Co. v. Ickes, supra, 302 U.S. 464, 479, 58 S. Ct. 300, 303, the question is phrased: "The only pertinent inquiry, then, is, What enforceable legal right of petitioner do the alleged wrongful agreements invade or threaten?" While the Alabama Power case involved "lawful" competition, as distinguished from "unlawful" competition, as contended for here by plaintiff, nevertheless it can be cited for the rule that competition is *damnum absque injuria* unless some "right" in the plaintiff is injured.

The same proposition is amply illustrated by Mr. Justice Roberts speaking for the court in the Tennessee Electric Power Co. case, supra, 306 U.S. 118, 138-139, 59 S. Ct. 366, 370: "They [the plaintiffs] seek to stigmatize the Authority's present and proposed competition as 'illegal' by reliance on their franchises which they say are property protected from injury or destruction by competition.   *   *   *

"The vice of the position is that neither their characters nor their local franchises involved the grant of a monopoly or render competition illegal. The franchise to exist as a corporation, and to function as a public utility, in the absence of a specific charter contract on the subject, creates no right to be free of competition, and affords the corporation no legal cause of complaint by reason of the state's subsequently authorizing another to enter and operate in the same field."

Or, stated another way, the plaintiffs had no property right which had been injured. Governed by the above rules, we can state the proposition thusly: If plaintiff does not have a right to be free from the competition of the defendant, then any in-

jury flowing from such competition is *damnum absque injuria.*

In support of his argument that he had a property right to protect, plaintiff cites the cases of Johnson v. Towsley, 13 Wall. 72, 80 U.S. 72, 20 L. Ed. 485; School Township v. Wiggins, 142 Iowa 377, 120 N.W. 1032, 1035; Truax v. Raich, 239 U.S. 33, 36 S. Ct. 7, 60 L. Ed. 131, for the proposition that plaintiff has a right in equity to protect his private rights in the nature of property. For the proposition cited we find no argument, but as support for the plaintiff's cause, they fatally lack the factual similarity requisite for them to serve as precedents for his action.

The Johnson case, supra, was a suit by a patentee from the federal government to have his patent declared paramount to defendant's; defendant's patent being subsequent in time to plaintiff's. Although the court recognized that generally the act of the Secretary of the Interior is final, with regard to rights in federal land, the court held that plaintiff, by virtue of his prior, valid patent, had sufficient right to contest the action of the Secretary in issuing a subsequent invalid patent to defendant.

The facts in the case of School Township v. Wiggins, supra, are clearly distinguishable from the instant case and there is no need to burden the opinion with any discussion thereon.

The Truax case, supra, was a suit by an alien resident of Arizona, who was discharged from his employment because his employer felt bound to comply with a penal statute of Arizona which made it a misdemeanor for a business to employ less than eighty per cent native-born citizens or qualified electors. The Supreme Court of the United States declared the statute unconstitutional on the basis it violated the equal protection clause of the Fourteenth Amendment to the United States Constitution, citing Yick Wo v. Hopkins, 118 U.S. 356, 359, 6 S. Ct. 1064, 30 L. Ed. 220; Wong Wing v. United States, 163 U.S. 228, 242, 16 S. Ct. 977, 41 L. Ed. 140; United States v. Wong Kim Ark, 169 U.S. 649, 695, 18 S. Ct. 456, 42 L. Ed. 890, in support of their decision. The facts in the Truax case are clearly distinguishable from the instant one.

. Plaintiff next attempts to predicate his right to bring this action upon two other grounds, which for the purposes of this opinion will be denominated: (a) those cases involving licensed professions, which allegedly stand for the rules that "The right to practice a licensed profession or occupation is a property right protectible in equity against an intruder into the field who is not validly licensed.", and "The person who is validly licensed is a proper party to bring the action to protect his property right."; and (b) Frost v. Corporation Commission, 278 U.S. 515, 49 S. Ct. 235, 73 L. Ed. 483.

Before discussing the merits of the above contentions, it would be well to set out what this court considers to be the basic rule governing plaintiff's right of action. It is contained in Restatement, Torts, section 710, page 527: "One who engages in a business or profession in violation of a legislative enactment which prohibits persons from engaging therein, either absolutely or without a prescribed permission, is subject to liability to another who is engaged in the business or profession in conformity with the enactment, if, but only if,

"(a)  one of the purposes of the enactment is to protect the other against unauthorized competition, and

"(b)  the enactment does not negative such liability."

In comment d of that work at page 529, we find the following statement: "A legislative enactment which prohibits persons from engaging in a profession without securing permission to do so from the proper public authority may have for one of its purposes the protection of the professional prestige and reputation of those who have the proper permission to practice the profession. If so, it satisfied the requirement of Clause (a) of this section.

"e.  *  *  *  Though a legislative enactment may prohibit persons from engaging in a particular business without the permission of the proper public authority, the purpose of the enactment may be, not to restrict or affect competition in that business, but rather to provide a source of revenue or a record to facilitate police inspection or supervision. Thus, for example,

an enactment may prohibit persons from operating a shoe shining business or from peddling on the streets without first securing a license, which is to be given to any applicant upon the payment of a stipulated fee. The object of such an enactment is to levy a tax rather than to protect persons against unauthorized competition. To its violation the rule stated in this Section does not apply. Likewise, an enactment may prohibit persons from operating a saloon or a pawnshop without first securing a license which is to be granted only if the applicant is found to be of good moral character and posts a bond for faithful obedience to prescribed regulations. The purpose of such an enactment is to facilitate the enforcement of the criminal law rather than to protect persons against unauthorized competition; and to its violation the rule stated in this Section does not apply."

Governed by the rule cited in the Restatement let us weigh the authorities cited in support of proposition (a) supra. Plaintiff cites Smith v. Illinois Adjustment Finance Co., 326 Ill. App. 654, 63 N.E. (2d) 264; Ezell v. Ritholz, 188 S.C. 39, 198 S.E. 419; and Hobson v. Kentucky Trust Co., etc., 303 Ky. 493, 197 S.W. (2d) 454.

The Smith and Hobson cases, supra, involved the rights of attorneys to enjoin defendants from the unlicensed practice of law in their profession. While both cases cited do not attempt to rationalize the Restatement view, nevertheless it is amply apparent that their right falls within the purview of comment d of the Restatement, supra. Thus members of the legal profession are protected from those attempting to practice without a license because the legislature had for one of its purposes the protection of the "professional prestige and reputation of those who have the proper permission to practice" law.

Other cases have been decided upon the grounds that attorneys are officers of the court, and that it is a duty as officers of the court to protect the courts, the general public and themselves against the illegal practice of law. See Depew v. Wichita

Retail Credit Ass'n, 141 Kan. 481, 42 Pac. (2d) 214, 217; 43 C.J.S. Injunctions, section 123, pages 662, 666.

The third case cited in this category, Ezell v. Ritholz, supra, was a suit to restrain the unauthorized practice of optometry without a license. Without burdening this opinion with a discussion of whether or not the court in that case found that one of the purposes of licensing the profession of optometry was to protect against unauthorized competition, it would be well to point out that New Hampshire Board v. Scott Jewelry Co., 90 N.H. 368, 9 A. (2d) 513, 517, and MacBeth v. Gerber's Inc., 72 R.I. 102, 48 A. (2d) 366, 367, are both cases in which the courts have followed the Restatement test of whether the legislature had, in licensing optometrists, for one of its purposes the protection of optometrists from the unauthorized competition of optometry. The courts found against the complainant in that regard, disallowing his right to sue. See also Cook v. Normac Corp., 176 Md. 394, 4 A. (2d) 747, 749, involving a suit by a theatre against an unlicensed competitor in which the court disallowed plaintiff's right to sue by applying the Restatement test.

Does the Frost case, supra, come within the Restatement view? In the Frost case plaintiff owned a cotton ginning business, which he operated under a permit from the defendant, State Corporation Commission. By statute, 17 Okla. St. Ann., section 41 et seq., gins were declared to be public utilities and their operation for the purpose of ginning seed cotton to be a public business. It was necessary to obtain a permit to gin cotton, to first make a satisfactory showing of public necessity. A subsequent proviso was added to the statute in 1925 which allowed cooperatives to engage in the cotton-ginning business without the precedent showing of public necessity. Defendant cooperative applied for a permit to enter into competition with plaintiff in Durant, Oklahoma. Plaintiff brought suit to enjoin the issuance of the license and enjoin defendant co-op from establishing a cotton gin in Durant, upon the ground that the proviso was invalid as contravening the due process and equal protection of law clauses of the Fourteenth Amendment. The first conten-

tion made was that the plaintiff had no property right to be affected by the operations of the co-op, and therefore no standing to invoke the provisions of the Fourteenth Amendment or to appeal to a court of equity.

Mr. Justice Sutherland, speaking for the United States Supreme Court, examined the statutes of Oklahoma with relation to the cotton-ginning business, noting that; they are public utilities, a public business; the corporation commission in charge of cotton gins and having control over them has the same power and authority as it had in relation to transportation and transmission companies—power to fix rates, charges and regulations. At pages 519, 520 and 521 of 278 U.S., at page 237 of 49 S. Ct., the court said:

"It follows that the right to operate a gin and to collect tolls therefor, as provided by the Oklahoma statute, is not a mere license, but a franchise, granted by the state in consideration of the performance of a public service, and as such it constitutes a property right within the protection of the Fourteenth Amendment. [Citing cases.]

"In California v. [Central] Pacific Railroad Co., supra, 127 U.S. 1, pages 40-41 [8 S. Ct. 1073, 32 L. Ed. 150], a franchise is defined as 'a right, privilege or power of public concern, which ought not to be exercised by private individuals at their mere will and pleasure, but should be reserved for public control and administration, either by the government directly, or by public agents, acting under such conditions and regulations as the government may impose in the public interest, and for the public security, * * * No private person can establish a public highway, or a public ferry, or railroad, or charge tolls for the use of the same, without authority from the Legislature, direct or derived. These are franchises. * * *'

"* * * Under these conditions, to engage in the business [of cotton ginning] is not a matter of common right, but a privilege, the exercise of which, except in virtue of a public grant, would be in derogation of the state's power. Such a privilege, by every legitimate test, is a franchise.

"Appellant, having complied with all the provisions of the statute, acquired a right to operate a gin in the city of Durant by valid grant from the state acting through the corporation commission. While the right thus acquired does not preclude the state from making similar valid grants to others, it is, nevertheless, exclusive against any person attempting to operate a gin without obtaining a permit or, what amounts to the same thing, against one who attempts to do so under a void permit, in either of which events the owner may resort to a court of equity to restrain the illegal operation upon the ground that such operation is an injurious invasion of his property rights. [Citing authorities.] The injury threatened by such an invasion is the impairment of the owner's business, for which there is no adequate remedy at law."

Plaintiff in the instant case relies heavily upon the last paragraph quoted as providing precedent for the present action. However, no precedent may be depended on from that paragraph unless one first finds a property right which was protectible—a franchise. It is quite evident that the court's reasoning falls clearly within the Restatement rule, that is, the statute which is violated must have for one of its purposes protection from unauthorized competition. Mr. Justice Sutherland clearly recognized this as the rule when he carefully examined the Oklahoma statutes governing the cotton gin business and came up with the conclusion that a permit to own and operate a cotton gin was a franchise, protectible in courts of equity. We find the following statement in comment c of Restatement, Torts, section 710, pages 527, 529: "An exclusive franchise clearly manifests a purpose to protect persons engaged in a specified business against unauthorized competition, but that purpose may appear in enactments containing no provisions for exclusive privileges. Thus, legislation generally prohibits persons from engaging in a public utility business without first securing permission from the proper governmental authority. One of the objects of such legislation commonly is the prevention of so much competition as to cause loss to those engaged in the in-

dustry with resultant deterioration or disruption of the service. One of the factors commonly prescribed by statute for determining whether permission to engage in the business is to be granted is the probable effect of the added competition upon the business of those already in the field.''

The comment in Restatement is merely another way of stating what Mr. Justice Sutherland emphasized in the Frost case, supra.

The cases subsequent to the Frost decision have been careful to delimit its application to a situation in which the right to engage in a complainant's business or occupation amounts to more than a mere license, but amounts to a franchise or property right. See Carolina Power & Light Co. v. South Carolina Public Service Authority, 4 Cir., 1938, 94 F. (2d) 520, 524; Corporation Commission v. Lowe, 281 U.S. 431, 435, 50 S. Ct. 397, 74 L. Ed. 945; Arkansas-Missouri Power Corp. v. City of Kennett, 8 Cir., 1940, 113 F. (2d) 595, 596; Capital Transit Co. v. Safeway Trails, Inc., 1952, 92 U.S. App. D.C. 20, 201 F. (2d) 708; R. B. ''Dick'' Wilson, Inc., v. Hargleroad, 165 Neb. 468, 86 N.W. (2d) 177; Sheridan-Wyoming Coal Co. v. Krug, 84 U.S. App. D.C. 288, 172 F. (2d) 282, 283; Delaware Optometric Corp. v. Sherwood, Del. 1957, 128 A. (2d) 812; New State Ice Co. v. Liebmann, 285 U.S. 262, 273, 52 S. Ct. 371, 76 L. Ed. 747; Greenwood County v. Duke Power Co., 4 Cir., 1936, 81 F. (2d) 986, 998, 999.

Delaware Optometric Corp. v. Sherwood, supra, 128 A. (2d) 812, 814, presented the question of whether or not licensed optometrists may enjoin the practice of optometry by unlicensed persons. The court in holding that they could not said:

''Whether or not such a franchise has been granted depends fundamentally upon the construction of the statute itself. It must appear that one of the statutory purposes is to protect the licensee from unfair competition by non-licensees. 3 Restatement of Torts, section 710. * * *

''It is apparent to us that, reading the Delaware Optometry Law as a whole [24 Del. C. sections 2101-2119], it was enacted

for the protection of the health of the general public from the incompetent practice of optometry. * * *

"We can find no provision in the statute which can remotely be considered as creating a property right in licensed optometrists to be free from competition from unlicensed persons. * * *

"* * * The plaintiffs also stress Frost v. Corporation Commission, 278 U.S. 515, 49 S. Ct. 235, 73 L. Ed. 483. That case, however, dealt with the right of the holder of a permit to operate a cotton gin within certain geographic limits to enjoin the operation of such a gin by the non-holder of a permit. The case is obviously not in point. Unlicensed competition which directly infringed on the plaintiffs' exercise of a *profitable personal grant under state authority was involved.*" Emphasis supplied.

The "profitable personal grant" was the right to be free from unauthorized competition.

To determine plaintiff's standing to sue, therefore, governed by the above authorities we must examine the statutes in Montana governing the regulation of insurance agents' activities to determine if one of the purposes of the enactments was to protect them from unauthorized competition.

We believe the intent of the legislature is clearly manifested in the provisions of section 40-1308, R.C.M. 1947, which provides: (1) Before transacting any type of insurance business each agent must procure license as an agent from the commissioner of insurance upon payment of a $5 fee; (2) Each applicant for license must, upon blanks furnished by the commissioner, disclose his name, age, residence, place of business and occupation for five years prior to date of application; state his experience and knowledge of insurance business, whether he is indebted to any other insurance company or agency, and whether and for what reasons he ever had an insurance agency contract cancelled; (3) The applicant shall be vouched for by an official or representative of the company for which he proposes to act, who shall represent in effect the applicant's character; upon

termination of employment the company shall notify the insurance commissioner; (4) The commissioner of insurance may suspend or revoke a license upon a showing that the agent has violated any of the insurance laws of Montana, has been convicted of a felony, or has been shown untrustworthy or incompetent to act as an insurance agent; and (5) Provides that any person who violates the provisions of this act shall be subject to fine or imprisonment or both.

In 16 Appleman, Insurance Law and Practice, section 8632, page 3, the author states:

"Statutes relating to insurance agents are highly regulatory and often penal in form, *and are intended to safeguard the rights of those dealing with insurance agents, even though they may also raise some revenue for the commonwealth. The object of laws providing for licenses for agents, brokers, and solicitors is, therefore, more for the protection of the public than to provide revenue. More explicitly, it has been stated that it is desired to protect the public from surrendering its money in exchange for questionable or worthless pieces of paper denominated insurance policies."* Emphasis supplied.

In section 8633 we find the following rule stated: *"A statute authorizing the issuance of a certificate of authority to act as an insurance broker is, therefore, considered a police regulation rather than a tax measure. And a statute making it unlawful for one to act as an insurance solicitor without a license must be construed to protect policy-holders."* Emphasis supplied.

It is quite apparent that our statutes governing the issuance of licenses to agents has for its purposes the same ultimate aims of statutes generally as indicated by Appleman, supra. The plaintiff's right of action therefore, falls squarely within the Restatement rule contained in comment e supra, which states that where the purpose of the statute is merely "police" regulation or supervision, then plaintiff has no right of action. See also Delaware Optometric Corporation v. Sherwood, supra.

The query presented by Mr. Justice Matthews in New Orleans, M. & T. R. Co. v. Ellerman, 105 U.S. 166, 173, 26 L. Ed.

1015, is particularly apt at this point: "But if the competition in itself, however injurious, is not a wrong of which he could complain against a natural person \* \* \* how does it become so merely because the author of it is a \* \* \* [foreign government]?"

For the foregoing reasons this court is constrained to affirm the judgment of the district court giving judgment to defendants on the pleadings on the grounds that plaintiff was not the proper party to bring this action.

MR. JUSTICE ADAIR, and THE HONORABLE EUGENE B. FOOT, District Judge, sitting in place of MR. JUSTICE BOTTOMLY, concur.

MR. JUSTICE ANGSTMAN: (dissenting).

I do not agree with the foregoing opinion. I concede that a licensed insurance agent has no franchise or property right which may be protected against injury or destruction by competition within the rule stated and followed in Tennessee Electric Power Co., v. Tennessee Valley Authority, 306 U.S. 118, 59 S. Ct. 366, 83 L. Ed. 543.

I think there is a vast difference however between "lawful" competition and "unlawful" competition which is the matter complained of here by plaintiff.

When plaintiff was licensed as an insurance agent he obtained rights and privileges.

As the court stated in State v. Loucks, 30 Wyo. 485, 222 Pac. 37, 39, when speaking of a licensed insurance agent, "The relator had some right under the license. Though it may be granted that it was not property, it was nevertheless of value to him and could not be arbitrarily taken from him any more than his real or personal property could be so taken. Dent v. [State of] West Virginia, 129 U.S. 114, 9 S. Ct. 231, 32 L. Ed. 623."

I think he has a sufficient right to institute and prosecute proceedings to prevent another from masquerading as a licensed

insurance agent when in fact his license was and is unauthorized and void as alleged here. Of course, I do not say that the license of defendant corporation is in fact void as unauthorized under the law but that is the charge made in the complaint and for the purpose of this proceeding we must assume that the allegations made are true.

I do not believe the statement relied on in the majority opinion contained in Restatement, Torts section 710, page 527, has any application here. That statement in substance is that the unlicensed agent is liable to the licensed one under the conditions there stated, on of which prescribed as a condition that the purpose of the licensing statute is "to protect * * * against unauthorized competition."

That statement does not come into play here because plaintiff does not contend that he has a right to recover damages for injury to his business.

The fact that he recognizes that he has no cause of action for damages is the very reason why he is proceeding against the state auditor to have the unlawful license issued to the defendant corporation revoked.

Furthermore if we assume that the statement from the Restatement, section 710, relied on in the majority opinion has application here, I think that by necessary implication our Legislature intended by the licensing statute to protect a duly licensed insurance agent against unauthorized competition. I think our Legislature in legal effect promised to those holding a duly issued license as an insurance agent that unlicensed agents would not be tolerated in the same field and that licenses would be issued to those only who possess the requisite qualifications.

I think plaintiff has a sufficient interest and right to seek its protection by the courts against unauthorized and illegal competition as is here sought. Compare North Arlington National Bank v. Kearny Federal Savings & Loan Ass'n, 3 Cir., 1951, 187 F. (2d) 564, certiorari denied 342 U.S. 816, 72 S. Ct. 30, 96 L. Ed. 617.

I think the judgment should be reversed.

MR. JUSTICE CASTLES:

I concur in the dissenting opinion of MR. JUSTICE ANGST-MAN.