THE MONTANA POWER COMPANY, A MONTANA CORPORA-
TION, PLAINTIFF AND APPELLANT, *v.* VIGILANTE ELEC-
TRIC COOPERATIVE, INC., A CORPORATION, ET AL., RE-
SPONDENTS.

No. 10580

Submitted October 4, 1963. Decided December 18, 1963.

387 P.2d 718

120

Krest Cyr, John C. Hauck and Wm. H. Coldiron, Butte, John C. Hauck, Butte, (argued), William H. Coldiron, Butte (argued), for appellant.

Schulz & Davis, Dillon, Smith, Boone & Karlberg, Missoula, Leonard A. Schulz, Dillon, (argued), Russell E. Smith, Missoula, (argued), for respondents.

MR. JUSTICE CASTLES delivered the Opinion of the Court.

This is an appeal from a judgment of the district court denying plaintiff's application to permanently enjoin defendants from furnishing electric service in the City of Dillon and granting declaratory relief to the defendants on its cross-appeal as will be hereinafter shown.

Appellant, plaintiff below, is The Montana Power Company, and will hereinafter be referred to as the Utility. Respondents, defendants below, are The Vigilante Electric Co-operative, certain named persons as its trustees and manager, and will hereinafter be referred to collectively as the Co-op.

The Utility sought to enjoin the Co-op from furnishing electric energy and service to customers within the City of Dillon, Montana, and particularly within the area annexed to the City in 1960, which area will be referred to as the annexed area.

The Utility is a public utility corporation organized under the laws of Montana and has been and is engaged in furnishing electric service in the State of Montana, including the City of Dillon, and surrounding areas. It holds a nonexclusive fran-

chise to supply electric energy and service anywhere within the territorial limits of the state and is subject to the jurisdiction and control of the Public Service Commission of Montana.

The Co-op is a rural electric co-operative membership corporation, organized and existing under Title 14, Chapter 5, R.C.M. 1947, as amended. The Co-op has been engaged in the distribution and sale of electric energy and service to persons residing in rural areas in Beaverhead County and elsewhere.

The area in which the conflict occurs is a tract on the north side of Dillon which area was annexed to the City of Dillon, by action of the City council, effective as of November 1, 1960. On November 1, 1960, the Co-op was supplying electric energy and service to eleven customers within the annexed area. The first service installation by the Co-op in the annexed area was in the year 1940, and the last, prior to this proceeding, was made in September 1959.

Prior to June 13, 1939, the Union Electric Company was engaged, as a public utility, in the sale and distribution of electric energy and services to residents of Dillon, and to a limited number of inhabitants living adjacent to the city limits, including the annexed area. On June 13, 1939, the Utility purchased the plant, lines and distribution system of Union Electric. In the years 1938 and 1939, the Co-op with the Utility's full knowledge, encouragement, and agreement, constructed an electrical distribution system for the purpose of supplying energy and service to persons residing in rural areas adjacent to the city limits of Dillon, including the annexed area, and since December 1939 the Co-op has been engaged in supplying service to such areas.

The City of Dillon is, and was in the year 1960, an incorporated city having a population in excess of 3,500. The Utility offered, and continues to offer, to purchase for a reasonable value from the Co-op the existing lines and facilities owned by the Co-op within the annexed area and the Co-op has refused such offer. The Utility demanded that the Co-op not extend

its lines or construct facilities within the annexed area and that it not make additional connections to its existing facilities and that it not furnish additional services to any existing, other or additional customers within the annexed area.

Despite the offer and demand mentioned above, the Co-op asserted the right to continue serving within the perimeter of its existing services within the annexed area and proceeded with plans to extend its lines and construct facilities and to furnish additional service to existing, other and additional customers within the annexed area.

The Utility thereupon brought this action to enjoin the Co-op from doing such acts. By way of cross-complaint, the Co-op claimed the right not only to serve its existing customers within the annexed area, but also to serve additional customers who should desire service within the outside perimeter of a line drawn through the farthest extensions of its facilities in the annexed area. Co-op also claimed the right to serve additional energy by means of existing facilities in the area.

The district court denied the Utility's application for a permanent injunction. The Utility's specifications of error are five in number going to the conclusions of law and judgment. As expressed by the Utility's brief, the basic question is whether, under the laws of Montana, the Co-op has any right to furnish electric service within the boundaries of a city having a population in excess of 3,500. The Co-op makes a cross-assignment of error to the effect that the district court erred in concluding as a matter of law that the Utility is a real party in interest and has a right to maintain an action to restrain unlawful competition.

We think neither of the two questions posed above by the parties is determinative of this appeal. To preface our discussion we shall quote certain of the district judge's conclusions.

"II. That at all times prior to November 1, 1960, the

'annexed area' was a rural area within the meaning of Chapter 5, Title 14, R.C.M.1947.

"III. That at the time the defendant Vigilante Electric Co-operative, Inc., extended its lines into the annexed area its acts were within its purposes as provided by section 14-502, R.C.M.1947, and within its power as granted by section 14-504, R.C.M.1947.

"IV. That the power of a corporation to do an act is to be judged at the time the corporate act is done, and where a corporation in good faith exercises a corporate power, and expends substantial amounts of money in the exercise of that power the continued exercise of the power does not become unlawful by reason of changes in population or municipal corporation boundaries, in the absence of an express legislative declaration."

It will be seen that these conclusions go far beyond the question posed by the Utility as the question on this appeal. It is not simply whether the Co-op has a right to furnish electric service within the boundaries of a city having a population in excess of 3,500, but rather where once the Co-op is serving customers rightfully, whether by statutory authority or agreement and acquiescence, can it be displaced because of acts of third parties such as the city council in annexation?

We shall approach our discussion by quoting pertinent parts of Chapter 5 of Title 14, R.C.M.1947.

R.C.M.1947, § 14-502, as amended, provides:

*"Purpose.* Cooperative, nonprofit, membership corporations may be organized under this act for the following purposes:

"(a) for the purpose of supplying electric energy and promoting and extending the use thereof *in rural areas, in which electrical current and service are not otherwise available, from existing facilities and plants; * * *."* (Emphasis supplied.)

R.C.M.1947, § 14-503, as amended, provides:

"*Powers.* A cooperative shall have power: * * *

"(1) In the case of corporations organized under the provisions of paragraph (a) of section 14-502, Revised Codes of Montana, 1947, as amended by section 2 of this act:

"(1) To generate, manufacture, purchase, acquire, accumulate and transmit electric energy, and to distribute, sell, supply and dispose of electric energy *in rural areas* to its members, to governmental agencies and political subdivisions, and to other persons not in excess of ten per centum (10%) of the number of its members; * * *." (Emphasis supplied.)

R.C.M.1947, § 14-530, as amended, provides:

"*Definitions.* In this act, unless the context otherwise requires:

"(a) 'Rural area' as applied to all corporations organized under the provisions of paragraph (a) of section 14-502, Revised Codes of Montana, 1947, as amended by section 2 of this act, *means any area not included within the boundaries of any incorporated or unincorporated city, town, village or borough having a population in excess of thirty-five hundred (3500) persons at the time of the passage and approval of chapter 172, Session Laws of Montana, 1939, or subsequent thereto; * * *.*" (Emphasis supplied.)

It will be seen from the foregoing statutes, sections 14-502, 14-503, and 14-530, that clearly and unambiguously the Co-op has no right to serve electricity in a non-rural area. Thus, if the question posed by this appeal were simply whether the Co-op has a right to furnish electric service within the boundaries of a city having a population in excess of 3,500, it clearly would not.

As the district court found and concluded, prior to November 1, 1960, the "annexed area" was a rural area. It was the act of annexation that changed a rural area to a non-rural area.

The Rural Electric Cooperative Act has been considered by this court in two cases, the first of which was Sheridan Electric Co-operative v. Montana-Dakota Utilities Co., 128 Mont. 84, 270 P.2d 742. In that case this court held that the Legislature did not intend to give the Co-op an exclusive right to furnish electric energy in rural areas.

The second case in which the Cooperative Act was considered was Montana Power Company v. Park Electric Co-op, 140 Mont. 293, 371 P.2d 1. In that case the Utility sought to enjoin the Co-op from supplying electric service to any members or customers within an addition to the City of Livingston. The Co-op succeeded in rushing through to completion electrical service installations just four days prior to annexation of the Star Addition to the City of Livingston. In that case a "rural area" was changed to a "nonrural" or urban area by action of the city council, although as pointed out in the opinion, the Addition was not, in contemplation of the rural electrification act, a rural area since it was contemplated, planned, promoted and organized as a subdivision to the City of Livingston. Then the opinion in the Park Co-op situation goes on to point out that the Utility had service lines on three sides of the area and thus that electrical current and service from existing facilities and plants were otherwise available.

In the opinion in Montana Power Co. v. Park Electric Co-op, supra, it was pointed out at page 300 of 140 Mont., at page 5 of 371 P.2d that:

"It is observed that Montana's statute, section 14-502 is more restrictive than any similar statute in other states. It spells out the limits of the Co-operative service, *restricting it to rural areas and where service is not otherwise available from existing facilities and plants*. The Legislature has used restrictive language. The public policy declared is one for the Legislature and not for this court." (Emphasis supplied.)

Now then, the Utility argues that since the Co-op is limited

as above, when the Legislature used the words in section 14-530, subd. (a), defining "rural area" at the time of passage of the act *or subsequent thereto,* it clearly contemplated that an area, which was rural at the time that service commenced might *cease to be so.* This language appearing in section 14-530 ("or subsequent thereto") did not appear until 1949 by amendment of the Legislature.

We think the foregoing assertion by the Utility begs the question. When a Co-op is serving a rural area legally and rightfully, the words "or subsequent thereto" do not terminate that status. A reasonable interpretation would seem to be that the use of the language was to operate at any time service was contemplated. For example, if after November 1, 1960, the Co-op were to extend its service to, what had on October 31 been a rural area, without available service, it would not be authorized to so do. More will be said later herein concerning this feature.

The Utility cites Farmers Electric Co-op Corp. v. Arkansas Power & Light Co., 220 Ark. 652, 249 S.W.2d 837. In that case the Arkansas Court stated the question as follows:

"The point at issue is whether Farmers Electric Cooperative Corporation is entitled to serve patrons now within the city limits of Newport, but who were in a non-urban area when the Public Service Commission, through its certificate of convenience and necessity, authorized Cooperative to occupy the territory."

The Arkansas Court held that the Co-op could not continue to serve members in an annexed area. In the course of its opinion the Arkansas Court said:

"In the instant case the legislative Act excludes cooperative from cities and towns where the population is in excess of 2,500. Newport, by reason of population, is admittedly within the proscribed territory, unless we can say that the occupancy when the city's boundaries were extended leaves appellant free to continue its operations

in spite of the fact that Arkansas Power & Light has a permit to serve the entire city. * * *

"Apprehension is expressed that an affirmance of the Circuit Court judgment would establish a precedent under which a cooperative, after operating in good faith in an unquestioned rural area where in the beginning the population was such that a major power company would not extend lines to it, might suffer from the mere fact that it aided in developing the community. This, says appellees, might occur if the population passed 2,500. It must be conceded that the law does not provide for an extreme contingency of this kind, and we do not in this opinion, by inference or otherwise, suggest that a cooperative would be automatically ousted with attainment of the maximum population figure.

"The circumstances here are quite different. The territory assigned appellant was contiguous to the city. *The normal trend of a town or city is to build, hence one claiming rights pertaining only to rural territory enters such an area with notice that the municipal corporation will very likely expand, as Newport did in this case. An anomalous situation would result if it should be judicially determined that rights essentially rural could not be disturbed by city expansion.* The serious difficulty arises when compensation is considered. In the case at bar, however, appellee has offered to pay on a fair appraisal basis and it is not suggested that the litigants cannot agree."

At the time of the Arkansas opinion, in 1952, the Arkansas statute did not restrict membership to "rural areas" as now.

In Texas in State v. Upshur Rural Electric Cooperative Corp., 156 Tex. 633, 298 S.W.2d 805, 808, the Supreme Court followed the Arkansas case insofar as it held that residents of an annexed area are not qualified to be members of a Cooperative. Then the Texas Court went on as follows:

"The question which we have experienced most diffi-

culty in deciding is whether the Cooperative may continue to service those persons who now reside in areas annexed to the City of Gilmer who were lawful members of the Cooperative at the time such areas were annexed to the city. The trial court held that it has that right. The cases above cited, particularly the cases from the Supreme Court of Arkansas, deny that right. While we recognize that the Act is susceptible of the construction placed upon it by the Arkansas court, still we are constrained to agree with the trial court that lawful membership once acquired is not terminated by annexation. * * * Since members retain that status after annexation, and since the Cooperative is expressly authorized to supply electric energy to its members, it is our view that it is authorized to continue that service to them after annexation."

We have also examined Pee Dee Electric Membership Corporation v. Carolina Power & Light, 253 N.C. 610, 117 S.E.2d 764, in which the North Carolina Court under statutes which do not define "rural area" nor have the restrictive language of the Montana statutes, hold that when a Co-op entered an area rightfully, i. e., prior to annexation, it could continue to serve after annexation. But the North Carolina Court significantly restricted the right to only those presently served.

In City of Moultrie v. Colquitt County Rural Elec. Co., 211 Ga. 842, 89 S.E.2d 657, it was held that the limitation on a Cooperative is to be determined at the time the application for service is made. And, here too, the Georgia Court denied relief to the Co-operative on the issue of extending its service.

We shall return now to Montana Power Co. v. Park Electric Co-op, supra. In that case, the issue on appeal was whether the Utility was guilty of laches as the trial court had held. In order to determine that issue we reviewed the situation leading up to an analysis of laches. We pointed out that under the terms of our statutes, two situations demonstrated the Park Co-op's lack of statutory authorization. They were:

(1) The area, the Star Addition was not, in contemplation of the statutes, a rural area; and

(2) There was service available from existing facilities.

Either of these situations would have been sufficient in itself to show a lack of authority. In that case, the Park Electric Co-op had stressed the fact that they had entered the area while it was still a rural area, that is, four days before annexation.

In our present situation, at the time of service of electric power by the Co-op, neither situation existed. There was no service in the statutory sense, from existing facilities, and the "annexed area" prior to annexation was a rural area in every sense of the definition contained in the statute. Thus, we conclude that the Park Electric Co-op case is not controlling here.

By reason of our discussion heretofore, and our analysis of other authority, we hold that the authority of a Co-op to service a customer in an area is not lost by a change of status of that area from rural to urban. In that regard, the District Court was correct.

Subsequent to submission of this appeal, our attention was called by respondent Co-op's counsel to the Oklahoma case of Caddo Electric Co-operative v. State ex rel. Whelan, County Atty. of Canadian County, et al., Okl. (1963) P.2d ..... The opinion in that case has not been reported as yet and is still being considered on a motion for rehearing by the Oklahoma Court. We have, however, carefully examined the opinion as it now stands, and find it substantially in conformity with our holding herein. It is not otherwise cited nor relied upon.

The appellant Utility asserts the introduction in the 1963 Legislative Session of Senate Bill No. 194, and its subsequent failure of passage sheds some light on the public policy of this State. The Utility asserts that the intent and meaning of the language contained in section 14-530 was made clear by this failure of legislative approval of S.B. No. 194.

Senate Bill 194 was entitled, "An Act Relating to the

Supplying of Electric Service, Restricting Duplication of Such Service, and Providing for the Continuance of Such Service in Urban Areas." A reading of sections 1 and 2 of the Bill indicates that the purpose of the Bill was to have allowed a rural electric co-operative to continue to serve electric customers in areas annexed to cities where such co-operative was serving in the area prior to annexation. Also it would have approved what we have referred to hereinafter as the "perimeter theory" and restricted duplication of service in that area. It is asserted in briefs of the Utility that the facts of *this case* were presented by the Co-op counsel in *this case*, in the light of our decision in the Park Electric case, supra, and, that thus the intent of the Legislature in refusing to change the law is clearly established.

We reject this argument because no reference in the legislative proceedings to the sections of our law under consideration is made, and the arguments in the brief, in effect, are outside the record of legislative proceedings. In Murray Hospital v. Angrove, 92 Mont. 101, 116, 10 P.2d 577, 583, it was said:

"However, as indicated by the foregoing authorities, it is the contemporaneous action and construction by the legislature to which we may resort in order to determine the intent of that body in enacting a law or rejecting an amendment thereto.

"No case has been cited, or found, holding that the records and journals of subsequent sessions of the legislature have any probative value in determining the intent of the legislature in passing laws already on the statute books, or that the defeat of an attempted amendment to a law which has been on the books for sixteen years throws any light upon the intent of the assembly which enacted that law."

The next point raised is that quoted in Conclusions of Law numbers V and VI, which are as follows:

"V. That since the acts of the defendant in constructing facilities in the 'annexed area' were lawful when done,

the use of such facilities for additional customers or for additional service to existing customers within a perimeter marked by a line drawn through the farthest extension of such facilities is not unlawful.

"VI. That by virtue of the provisions of Section 14-503, R.C.M.1947, the defendant has a right to serve 'other persons not in excess of ten per cent (10%) of the number of its members,' and that the rural area limitation does not apply to such 'other persons,' That plaintiff has failed to sustain the burden of proving that the persons served within the 'annexed area' are in excess of ten per cent (10%) of the number of its members."

The foregoing conclusions in paragraph V are referred to by counsel as the "perimeter theory." Our statutes provide no authority for such a theory. As previously indicated in our discussion, our statutes restrict corporations organized under Chapter 5 of Title 14 to service to rural areas, and where service is not otherwise available. Also as discussed what is once rural may become urban. When it does, the authority ceases, and is restricted except as we have previously discussed.

We have previously quoted and referred to authorities in other jurisdictions. In each of them, while there is disagreement as to whether a Co-op can continue to serve *existing* customers, they are all in agreement that a Co-op cannot extend its services after annexation. We have found no authority to the contrary.

But, Co-op sets up Conclusion of Law number VI, quoted above, as permitting them to serve 10 percent of the number of its members who are other persons, and thus they reason that the 10 percent can be other than in a rural area. R.C.M.1947, § 14-503, subd. (d), provides in part:

"(d) To generate, * * * and to distribute, * * * and dispose of electric energy in rural areas to its members, to governmental agencies and political subdivisions, and to

other persons not in excess of ten per centum (10%) of the number of its members."

From our discussion heretofore it is clear that the statutes limit Co-ops to *rural areas*. The right of the Co-op to supply electric energy to "other persons not in excess of ten per centum (10%) of the number of its members" is subject to the "rural areas limitation." (See The Montana Power Company v. Park County Electric Co-operative, supra.)

Having found that the district court's conclusions of law numbers V and VI are erroneous, the judgment is modified accordingly.

One more subject needs discussion. That is the cross-assignment of error asserted by the Co-op to the effect that the district court erred in concluding as a matter of law that the Utility is a real party in interest and has a right to maintain an action to restrain unlawful competition.

The contentions and arguments made by the Co-op on this cross-assignment of error are identical to those made by the Co-op in its brief in support of its motion to appear amicus curiae on the Petition for Rehearing in the case of The Montana Power Company v. Park County Electric Co-operative, Inc., supra. We rejected these arguments in that case. In the Park County case we said:

"* * * The Co-operative insists that the Utility had no capacity to sue, arguing that the Co-operative was only charged with doing an *ultra vires* act, and that only by action of the Attorney General could it be inquired into. The trial court properly denied this attack; and even though we do not consider this an issue on this appeal, we do point out analogous holdings of this court stating clearly that the Utility does have standing to contest unlawful competition. See Northern Pacific Ry. v. Bennett, 83 Mont. 483, 272 P. 987; Stoner v. Underseth, 85 Mont. 11, 18, 277 P. 437."

The Co-op argues that this court overlooked its opinion in

Waite v. Holmes, 133 Mont. 512, 327 P.2d 399, in making its holding, and that the two cases cited, Northern Pacific Ry. v. Bennett and Stoner v. Underseth, involve acts done in absolute contravention of law. We have not overlooked Waite v. Holmes.

In Waite v. Holmes, supra, it is clearly pointed out that franchised utilities, having more than a mere license, have a property right which can be protected. Therefore, we reiterate that the Utility is a real party in interest and has a right to maintain the action.

By what we have heretofore said, the judgment is affirmed insofar as it holds that the cooperative may continue to serve existing customers in the annexed area, but is reversed as to other matters hereinbefore indicated, each party to pay its own costs.

MR. CHIEF JUSTICE JAMES T. HARRISON and MR. JUSTICE JOHN CONWAY HARRISON and MR. JUSTICE DOYLE concur.

MR. JUSTICE ADAIR dissenting:

I dissent.

In my opinion the judgment of the district court in this cause was and it is correct and such judgment should be affirmed in its entirety with the costs on this appeal to be taxed against the appellant herein.