CITY OF RALEIGH v. CAROLINA POWER AND LIGHT COMPANY.

(Filed 27 October, 1920.)

1. **Railroads—Street Railways—Charters—Municipal Corporations—Cities and Towns—Enlarged Limits—Governmental Powers—Streets and Sidewalks.**

The provisions of a charter granted by a municipality to a street railway company that it pave along and between its rails and turnouts, etc., in the same manner and materials, etc., as the municipality should use when improving its streets where the tracks run, applies to improvements of streets in added territory by an extension of the city limits, not alone under the conditions imposed by the charter, but also under the general exercise of the governmental powers of the municipality.

2. **Same—Moving Track.**

Under a provision of a franchise given for a street railway by a municipal corporation that its tracks shall be located, wherever practicable, in the center of the street, and also under the general police or governmental powers generally exercised by the municipality, a city or incorporated town may lawfully require the railway company to remove a track it is operating on the side of a street near the sidewalk, to the center of the street.

CONTROVERSY without action, heard and determined by *Daniels, J.,* at June Term, 1920, of WAKE.

The proceeding is brought to recover $13,312.69, with interest from 15 October, 1914, money paid out by the plaintiff for removing car track, paving between tracks, etc., for defendant. It was agreed that this work should be done by the plaintiff, and if it should be decided that the defendant was liable therefor, then the plaintiff should recover the same. His Honor rendered judgment against the defendant, which appealed to the Supreme Court.

*J. S. Manning and J. W. Hinsdale, Jr., for plaintiff.*
*J. H. Pou, W. L. Currie and Walter L. Watson for defendant.*

BROWN, J. We gather the following facts from a voluminous case agreed: The defendant and its predecessors operated under a license granted by the city of Raleigh, double-track street car line up Hillsboro Street to the city limits at St. Mary's Street. Defendant operated the same line beyond St. Mary's Street on what was called Hillsboro Road, and on the north side thereof, for some distance beyond the city limits by virtue of authority granted by the board of county commissioners of Wake County to operate said road, they directing that the tracks shall be built on the north side of the said road. Defendant and its predecessors also secured permits from the property owners on the north side of said road which was given to defendant for a valuable consideration.

On 1 July, 1907, the western limits of the city of Raleigh were extended westwardly one-half mile to the intersection of Park Avenue and Hillsboro Street, and track in the defendant's road that far.

The city of Raleigh decided to improve and pave Hillsboro Street, and ordered the Carolina Power & Light Company, at its own expense, within the territory added to the city of Raleigh, on Hillsboro Street:

(a) To remove its car tracks from the north side of said street to the center of said street.

(b) To pave between the tracks and one foot on each side of the tracks.

(c) To pave the space between its double tracks in addition to the space of one foot on each side of the track.

The defendant denied the right of the city to compel it to do this work, and, under an agreement between plaintiff and defendant, plaintiff did the work and the liability of the defendant to pay for same was to be determined by the courts.

The franchise originally granted by the city contained the following clause: *"Provided, however,* that if the said city decides to put in or change its sewerage pipes on any of the streets of said city on which the track of said company may be laid, the said city may require the said company to remove and replace at its own expense the said track for said purposes. The space between the tracks shall be kept level with the rail, and shall be kept clean and in good order; and whenever the city shall pave or macadamize any street occupied by the tracks of said company it shall be the duty of said company, at its own expense, to pave or macadamize the space between the tracks and one foot on each side of the track with like material and in like manner as the city shall pave or macadamize said streets."

We think it is beyond controversy that the obligations and duties incumbent upon the defendant in respect to the streets embraced within the limits of the city before the extension of the corporate limits in 1907, attached at once to the defendant in respect to the streets embraced within the added territory.

In Dillon on Municipal Corporation (5 ed.), sec. 1304, it is said: "A grant of authority to use the streets of a municipality for the purpose of conducting water or gas, without express limitation, is not to be deemed restricted to existing streets and highways, but is to be construed as extending to streets and highways as subsequently enlarged, changed, or opened."

In *People v. Deehan,* 153 N. Y., 528, it was held: "If the company is authorized to use the streets of a municipality, the authority conferred extends to and includes streets in territory subsequently added to the

RALEIGH *v.* POWER CO.

city by annexation." *Rogers Water Co. v. Fergus,* 178 Ill., 571; Mc-Quillian on Municipal Corporation, vol. 4, sec. 1674; *Gas Light Co. v. St. Louis,* 46 Mo., 121; *People v. Deehan,* 153 N. Y., 528.

We think it equally clear that the plaintiff had the right to require the defendant to remove its tracks from the north side of Hillsboro Street to the center of the same. This is expressly provided in the franchise granted to the Raleigh Electric Company, the predecessor of the defendant, which contains the following provision: "The said tracks of the Raleigh Electric Company shall be located wherever practicable in the center of all of said streets, avenues, lanes, cartways, thoroughfares, and public highways."

In addition to the requirement contained in the franchise, the plaintiff, under the exercise of its police power, had the right to compel the defendant to remove its tracks to the center of the street. Dillon on Municipal Corporation, vol. 3 (5 ed.), sec. 1271. There it is said: "Pipes, conduits, rails, and structures erected or constructed in the city streets under a general grant of authority to use the streets therefor *are subject to the paramount power and duty of the city* to ·repair, alter, and improve the streets, as the city, in its discretion, may deem proper, and to construct therein sewers and other improvements for the public benefit. This paramount power and duty of the city is clearly *governmental* in its nature, and, in many cases at least, forms a part of the *police* powers of the municipality. The decisions hold that the grantee ·of the franchise has no cause of action for any damage which it may sustain by acts of the city in reasonably performing its duty in these respects." See, also, *Gas Light Co. v. New Orleans,* 197 U. S., 453; *People v. Geneva W. S. F. Co.,* 186 N. Y., 516.

It is manifestly true that in this day of multitudinous motor vehicles ·and other conveyances, the safety of the citizen requires that street car tracks shall be in the center of the street. This is a universal custom, we believe, in nearly all cities and towns where street cars are operated. We are also of opinion that the plaintiff had the right to compel the defendant to pave between the tracks and the one foot on each side, and also to pave the space between its double tracks. This comes within the· letter as well as the spirit of the franchise which contains the following provision: "The space between the tracks shall be kept level with the rail, and shall be kept clean and in good order; and whenever the city shall pave or macadamize any street occupied by the tracks of said company, it shall be the duty of said company, at its own expense, to pave or macadamize the space between the tracks and one foot on each side of the tracks with like material and in like manner as the city shall pave or macadamize said streets."

For the safe and convenient use of the public street it is as much

necessary to pave the space between the double track as it is to pave the space between each individual track. This authority is not only given the plaintiff, we think, under the franchise, but it is a proper exercise of the police power.

In *Atlantic Coast Line v. The City of Goldsboro,* 155 N. C., 358, it is held that: "An ordinance of the town requiring the plaintiff to lower its tracks to a level with the street at the expense of the railroad company was a lawful exercise by the town of its police power." In the same case it is said: "A railroad company accepts a charter from the State in contemplation of and subject to the development of the country, and with the expectation that cities and towns would require new or improved streets across rights of way acquired, and, therefore, by prior occupancy a railroad company can obtain no rights which would impede or render dangerous streets of incorporated towns to whom the power had been granted, in the exercise of their police power for the benefit of the citizens."

This case was affirmed by the Supreme Court of the United States, *R. R. v. Goldsboro,* 232 U. S., 548.

The question was fully considered in the case of *New Bern v. Atlantic & N. C. R. R. Co.,* 159 N. C., 542. In that case the railroad company had a right of way through the streets of the city of New Bern at the time the street was a dirt street. Owing to the increased size of the city and travel on the street, the local authorities deemed it necessary that the street should be paved with permanent material to insure the public a reasonable use of it. It was held that it was the duty of the railroad company to meet the present requirement of paving for the use of the city. In that case it is said: "When the express consideration for a franchise given by a city to a railroad company for the latter to have a right of way for its railroad through a street is that the railroad shall keep and preserve the street in good order for the use of the citizens of the town, the railroad, by operating under its franchise, impliedly promises to perform the same obligations in respect to keeping up this street as the municipality should owe to its citizens, contemplating the growth of the city and such improvements as would be suitable and proper in the future."

We do not think it necessary to discuss this matter further. The overwhelming weight of authority seems to place the liability of the defendant beyond doubt.

Affirmed.