**UPSHUR RURAL ELECTRIC COOPERA-TIVE CORPORATION et al.,**
Appellants,

v.

**The STATE of Texas ex rel. SOUTHWEST-ERN GAS AND ELECTRIC COMPANY et al., Appellees.**

No. 10379.

Court of Civil Appeals of Texas.

Austin.

April 11, 1956.

Dan Moody, Austin, Edwin M. Fulton, Gilmer, William A. Brown, Austin (M. E. Blackburn, Jr., Junction, Bryan Bradbury, Abilene, G. C. Butler, Bonham, L. B. Dawson, Corsicana, Ernest L. Langley, Hereford, Bascom Perkins, Mt. Pleasant, Francis Richter, Hondo, of counsel), for appellants.

John Ben Shepperd, Atty. Gen., William W. Guild, Asst. Atty. Gen., for appellee State.

George Prendergast, Marshal, Looney, Clark & Moorhead, Austin, Arnold & Arnold, Texarkana, for appellee Southwestern Gas & Electric Co.

ARCHER, Chief Justice.

The Attorney General filed a petition upon the relation of Southwestern Gas & Electric Company and W. H. Webb against Upshur Rural Electric Cooperative Corporation and the City of Gilmer, combining several causes of action in quo warranto and declaratory and sought relief thereon as follows:

(1) An action to enjoin the Upshur Coop from the allegedly ultra vires acts of distributing electric energy within the City, (2) a declaratory judgment action to construe the Electric Cooperative Corporation Act, Article 1528b, Vernon's Ann.Civ. St., and (3) a declaratory judgment action against the City and the Coop to declare void the franchise granted by the City to the Coop authorizing it to continue serving the areas it was serving prior to annexation to the City of Gilmer.

The City of Gilmer filed a plea of privilege which was overruled, but, on appeal to this Court, that order was reversed and the cause of action against the City of Gilmer and the Coop to declare the franchise void was ordered transferred to Upshur County. Pending that appeal, the case was tried on the merits, with the City being required to defend, and judgment was orally announced upholding the validity of the franchise. The written judgment finally entered made no disposition of that cause of action other than to transfer the cause to Upshur County pursuant to the mandate of this Court. City of Gilmer v. State of Texas ex rel. Southwestern Gas & Elec. Co., Tex.Civ. App., 281 S.W.2d 109.[1]

1. We are advised that judgment was entered March 26, 1956, by the District Court of Upshur County in such transferred cause validating such franchise and all acts performed thereunder.

Defendant Upshur filed pleas in abatement against the cause of action asserted on behalf of relators Southwestern Gas and Electric Company and W. H. Webb and against the cause of action asserted by the State of Texas. Both were overruled.

Fifty-four private corporations, also organized under the ECC Act, intervened as voluntary parties defendant in the declaratory judgment action, asserting that they were organized under the statute sought to be construed and which is, as a matter of law, part of their Articles of Incorporation. Their interest in the subject matter of the controversy and the effect the suit would have on rural electrification all over the State was pointed out in the petition in intervention of Texas Electric Cooperatives, Inc. et al.

The case was tried on the merits on April 25 and 26, 1955, and judgment was entered July 11, 1955. The judgment entered may be summarized as follows:

(1) The ECC Act was construed to: (a) restrict distribution of electricity by cooperatives to lawfully admitted members, (b) restrict the admission to membership to persons who, at the time of such admission, reside in rural areas, (c) permit electric cooperatives to continue distributing electricity to members in an area originally served when it was rural but which thereafter becomes non-rural, (d) permit electric cooperatives to serve their members wherever they desire service, irrespective of whether the premises served is in a rural or non-rural area.

(2) The judgment denied the injunction against service of members in the City of Gilmer.

(3) The judgment enjoined the Upshur Coop (but not the intervenor defendants) from distributing electricity to any person living in the City of Gilmer when such persons are not lawfully admitted members under the law as construed.

The Court entered findings of fact and conclusions of law and, upon request for specified further, additional or amended findings of fact and conclusions of law, made one additional finding and refused all others.

Defendants Upshur Rural Electric Cooperative Corporation and the fifty-four electric cooperative corporations which intervened as defendants gave notice of appeal and timely perfected their appeal. The judgment has been superseded, pending appeal, by defendant Upshur.

The appeal is before this Court on six points of error, to wit:

"1. The Trial Court erred in construing Article 1528b V.A.C.S. as imposing restrictions on electric cooperative corporations not imposed on commercial power companies.

"2. The Trial Court erred in construing Article 1528b V.A.C.S. as limiting the class of persons eligible to membership in electric cooperative corporations to persons residing in rural areas.

"3. The Trial Court erred in refusing to construe the 'central station service' provision of Article 1528b, V.A.C.S.

"4. The Trial Court erred in failing to give effect to Article 1436a V.A.C.S. which expressly provides that electric cooperative corporations may operate in any city or town in this State.

"5. The Trial Court erred in overruling Defendant's plea in abatement to the action on behalf of Relators Southwestern Gas and Electric Company and W. H. Webb.

"6. The Trial Court erred in overruling Defendant's plea in abatement to the action on behalf of the State of Texas."

The State as appellee presents its point as:

"The Trial Court erred in holding that corporations organized under Article 1528b, V.C.S., may continue to furnish electric energy to those persons in areas which become non-rural by

reason of growth, annexation or incorporation into a city or town having in excess of 1500 inhabitants."

Southwestern Gas & Electric Company has a point of error:

"The trial court erred in failing to hold that it is illegal for the Co-op to serve any electric customer within the limits of the City of Gilmer, and, in particular, that it is illegal for the Co-op to serve any customer within the areas which have been annexed to said City."

In the City of Gilmer v. State of Texas ex rel. Southwestern Gas & Elec. Co., Tex. Civ.App., 281 S.W.2d 109, we had before us a plea of privilege and in that case we quoted from Art. 1528b certain definitions and provisions and shall not set out such again in full. Sections 4, 7, 11 and 18 of the Act provide for the furnishing of electric energy to persons in rural areas who are not receiving central station service. The Coops have the power to acquire, own and hold, use * * * easements necessary, useful or appropriate; to exercise the power of eminent domain and to do and perform any and all acts and things and to have and exercise any and all powers as may be necessary, convenient, or appropriate to effectuate the purpose for which the corporation is organized.

Section 12 sets out the qualification of members.

Section 34 provides that the Act shall be construed liberally and that the enumeration of any object, purpose, power or manner, method, or thing shall not be deemed to exclude like or similar objects, etc.

The State contends that the Act should be construed:

"(1) to prohibit a coop from commencing to distribute electricity within a city above 1500 under any circumstances; (2) to prohibit a coop from continuing to serve its members after the rural area in which it properly commenced operations becomes annexed to a city above 1500; (3) to prohibit a coop from serving any persons previously receiving central station service from a commercial power company; (4) to prohibit a coop from commencing serving to any person in an area where the commercial power company could have served it; (5) to prohibit a coop from continuing service to a person first served when electric service was unavailable from other sources if thereafter a commercial power company undertakes to serve him. The intervenor-defendants asked for a declaratory judgment contrary to these assertions."

It was shown that Southwestern refused service to the area outside of Gilmer before the Coop built its line, although having lines near, except to a dairy.

The appellants take the position that the facts raise the issue of whether the service of premises in rural areas is originally illegal if a commercial power company has facilities in the area or is actually serving the premises and whether service becomes illegal when a commercial power company thereafter undertakes to render service, or when the area thereafter becomes non-rural.

Section 12 of Article 1528b provides in part that all persons in rural areas, proposed to be served, who are not receiving central station service, shall be eligible to membership. Section 16 provides that when a member has paid his fee in full for a certificate which is non-transferable a certificate of membership shall be issued.

Section 34 provides that the Act shall be construed liberally, that the enumeration of any object, purpose, etc. shall not be deemed to exclude like or similar purposes, etc.

Section 36 provides that the Act is complete in itself, etc.

■ We believe that a fair construction of the Act is that electric cooperatives once organized cannot be restricted with respect to competition with commercial

power companies, since competition must develop as areas served by electric cooperatives and commercial power companies grow together and overlap. Exclusive territory franchises are contrary to the Constitution and antitrust statutes.

■ We believe that the trial court was in error in its construction of Article 1528b as imposing restrictions on cooperatives not imposed on commercial companies, and in concluding that the Act limited the class of persons eligible to service to persons residing in rural areas.

Article 1528b provides for the formation of cooperative, nonprofit, membership corporations to engage in rural electrification by furnishing energy to persons in rural areas who are not receiving central station service, etc.

The term "Rural Area" is any area not included within the boundaries of any city, etc. having a population of not less than 1500.

■ The powers of a cooperative are set out in eighteen subsections, but the Act does not expressly limit the power to admit to membership other persons and to serve such persons whether the person is an inhabitant of a rural or non-rural area, but provides that the coops have the power to do any and all acts, etc. Sec. 4 (18). We believe that the coop may exercise such powers as are reasonably necessary to accomplish the purpose of its creation, and to continue serving its members in a rural area if a power company thereafter builds a line to serve the members.

■ We believe that the coop can continue operation of its lines and facilities which were originally constructed in a rural area after a portion of such area has been annexed to a town having over 1500 inhabitants, such service is necessary, convenient and appropriate to the continued service of the rural area to which service was extended in reliance thereon and to add new members.

■ To hold otherwise would be tantamount to granting Southwestern a monopoly for electric service in Gilmer, which is contrary to the public policy of the State.

North Side Ry. Co. v. Worthington, 88 Tex. 562, 30 S.W. 1055; Staacke v. Routledge, 111 Tex. 489, 241 S.W. 994; Southwestern Gas & Electric Co. v. City of Gilmer, D.C., 123 F.Supp. 11; 10 Tex.Jur., Sec. 261, p. 906; State v. San Antonio Public Service Co., Tex.Com.App., 69 S.W. 2d 38; Ennis Waterworks v. City of Ennis, 105 Tex. 63, 144 S.W. 930.

■ A home rule city may extend its corporate limits, with or without consent of the inhabitants, except another city, as far as it cares to.

City of Houston v. State ex rel. City of West University Place, 142 Tex. 190, 176 S.W.2d 928.

The City of Gilmer is incorporated under general laws and elections are required. Art. 974, 974-1, V.A.C.S.

Then, too, it is impossible to determine with certainty what are the boundaries of an unincorporated town, Sec. 2(8), and consequently it would be difficult for a coop to know in advance of construction whether such is lawful or unlawful and not possible for the REA to know whether there is adequate security for a loan.

Missouri Power & Light Co. v. Lewis County Rural Electric Cooperative Ass'n, 1941, 235 Mo.App. 1056, 149 S.W.2d 881.

There are towns that have or soon will have more than 1500 inhabitants that are served exclusively by cooperatives and surely it would not be seriously contended that all source of energy be discontinued by a cooperative electric company. The Act is to be and should be construed liberally.

We have been cited and have considered the decisions of Farmers Electric Cooperative Corporation v. Arkansas Power and Light Company, 220 Ark. 652, 249 S.W.2d 837, and Arkansas Electric Cooperative

824

Corporation v. Arkansas-Missouri Power Company, 221 Ark. 638, 255 S.W.2d 674, and we believe that the holding in Missouri Power & Light Co. v. Lewis County Rural Electric Cooperative, supra, is more appropriate when applied to the issue in our case, and shall not undertake to discuss the three cases further.

Article 1436a, V.A.C.S., provides, in part:

"Section 1. Corporations organized under the Electric Cooperative Corporation Act of this State, and all other corporations (including River Authorities created by the Legislature of this State) engaged in the generation, transmission and/or the distribution of electric energy in Texas and whose operations are subject to the Judicial and Legislative processes of this State, shall have the right to erect, construct, maintain and operate lines over, under, across, upon and along any State highway or county road in this State, except within the limits of an incorporated city or town; and to maintain and operate existing lines located on such highways and county roads; and to erect, maintain and operate lines over, across and along the streets, alleys and other public property in any incorporated city or town in this State, with the consent and under the direction of the governing body of such city or town."

The coop has the consent of and is operating, insofar as it does within the limits of the Town of Gilmer, under the direction of the city officials. Such consent was unnecessary for 10 years from time of annexation.

City of Mason v. West Texas Utilities Co., 150 Tex. 18, 237 S.W.2d 273.

 We believe there was no error in not sustaining the plea in abatement as to Webb and Southwestern because of a lack of justiciable interest. Arts. 6252 and 6257.

The judgment of the trial court is affirmed in part and in part reversed and rendered as herein stated, the statute is construed to mean that once a coop has legally entered an area it can continue to operate in such area even if a city has annexed a portion of such area and that it can service those in the annexed area who desire such service.

Affirmed in part and in part reversed and rendered.