133 So.2d 488

**CLARKE–WASHINGTON ELECTRIC MEMBERSHIP CORPORATION**

v.

**ALABAMA POWER COMPANY.**

I Div. 938.

Supreme Court of Alabama.

Sept. 21, 1961.

C. B. Gillmore, Adams, Gillmore & Adams, Grove Hill, J. M. Williams, Jr., Rushton, Stakely & Johnston, Montgomery, and Jos. C. Swidler, Nashville, Tenn., for appellant.

W. Johnson McCall, Thomasville, Martin, Vogtle, Balch & Bingham, Carey J. Chitwood and Alvin W. Vogtle, Jr., Birmingham, for appellee.

STAKELY, Justice.

This is an appeal from a decree sustaining the demurrer of the Alabama Power Company to the bill of complaint as amended filed by Clarke-Washington Electric Membership Corporation, a corporation, in the Circuit Court of Clarke County, in Equity. The complainant seeks to enjoin the respondent from duplicating certain electric distribution lines of the complainant. It seems from the record that the City of Thomasville intervened but did not demur to the bill of complaint, as amended.

The facts alleged in the bill are substantially as follows. The complainant is a corporation organized and incorporated under the Electric Membership Corporation Act of the State of Alabama (Chapter 2, Title 18, Code of 1940). Complainant was subsequently converted to a cooperative under the provisions of Chapter 3, Title 18, Code of 1940.

The respondent, Alabama Power Company, is a public utility corporation organized under the laws of the State of Alabama.

The complainant is engaged in the business of selling and distributing electrical energy to its members, customers, patrons in the counties of Clarke, Washington, Monroe, Baldwin and Wilcox. It has 2419 miles of distribution lines and approximately 8327 customers. Its distribution system cost in excess of four million dollars.

The distribution lines of the complainant in the aforesaid counties have been constructed, maintained and operated in territory which at no time has been served by the distribution lines of the Alabama Power Company, with the exception of certain

·customers initially served by the Interstate Utilities Company, whose distribution lines in the Northwest portion of Washington County were sold to the complainant. None of the customers, patrons or members of the complainant prior to their connection ·to the distribution lines of the complainant were receiving central power service and electrical energy had not been made avail-·able to said customers, patrons and members by the Alabama Power Company or any other utility.

The complainant, under the statutes authorizing its incorporation and under permits obtained from Clarke County and the State Highway Commission, had the right and privilege to erect its distribution lines upon the public highways, roads and other public ways of the county. Pursuant to this authorization the complainant, beginning in 1940 and prior to February 24, 1959, erect-·ed distribution lines in an area south and west of the corporate limits of the City of ·Thomasville at a cost of $15,000 to deliver electrical energy to approximately 113 members in said area. This area is referred to in the bill of complaint as the "extended area." The members and customers of the complainant within the extended area did not and could not receive electrical energy from any source until the same was provid-·ed by the complainant. The extended area for many years has constituted and now con-·stitutes an area whose electrical energy requirements have been served exclusively by the complainant and no portion of which has been served by the respondent.

In or about the years 1946–1947 the respondent agreed with the complainant that the territory lying south of the corporate limits of the City of Thomasville, along U. S. Highway 43, and the territory west of the corporate limits of the City of Thomasville lying along the old Grove Hill-Choctaw County (Choctaw Corner) public road should constitute territory, or service area, to be served exclusively by the complainant.

The electrical energy which complainant ·sells and delivers to its customers over its distribution system, including its distribution system within the extended area, is purchased wholesale from the respondent, under a contract dated May 20, 1953, which contains the following provision:

*"Duplication:*

"16. Neither party, unless ordered so to do by a properly constituted state regulatory authority, shall duplicate the other's facilities, except in so far as such duplication shall be necessary in order to transmit electric energy between unconnected points on its lines. When such duplicating facilities are so constructed, they shall not be used by the party owning them to serve existing customers served by, or prospective customers immediately adjacent to, the existing facilities of the other party. Neither party, unless ordered so to do by a properly constituted state regulatory authority, shall distribute or furnish electrical energy to anyone who, at the time of the proposed service, is receiving electric service from the other party, or to anyone having an initial contracted electrical load of less than 67 kilowatts, whose premises are capable of being served by the facilities of the other without extension of its distribution system beyond a distance of two-tenths (0.2) of a mile. The provisions of this Section 16 shall not apply to service by either party to any customer who is located within the corporate limits of a municipality in which such party has an electric franchise.

"The Consumer shall not sell the energy purchased from the Company hereunder to any person, firm, corporation, association or to anyone for resale except with the written consent of the Company."

On February 24, 1959, by an Act approved on the same date, Laws 1959, p. 99, the corporate limits of the City of Thomasville were extended to embrace the area described in the bill of complaint, as amended, and identified as the "extended area", and

to embrace other areas which are not involved in this litigation.

Reference to Exhibit "A" discloses that the corporate limits of the City of Thomasville were extended in a long narrow strip (lying along the highway) for a distance of some three miles to the south, as well as being extended to the northwest of the city, and all of which is embraced in the extended area as defined in the bill, and which constitutes the area which is in dispute in this litigation.

The Alabama Power Company had the opportunity to construct its distribution lines into the area served by the complainant and to serve the inhabitants thereof prior to the construction of the distribution system of the complainant, but failed to do so. It does not now have a certificate for service within the extended area.

The complainant is performing a necessary and useful service in making available electrical energy to its members, patrons and customers who have been unable to obtain electrical energy elsewhere. The system has been operated in an efficient and workman-like manner.

On March 25, 1959, representatives of the Alabama Power Co. informed the complainant that the Alabama Power Co. wished to purchase the distribution system of the complainant within the extended area and that if the complainant did not sell said distribution system to the respondent, the respondent would duplicate the distribution system of the complainant within the extended area in order to furnish electrical energy to the present customers, patrons and members of the complainant. The complainant declined to sell its distribution system within the extended area to the Alabama Power Co.

The construction of an electrical distribution system within the extended area, to duplicate the distribution lines of the complainant, and to serve such customers of the complainant as may request service from the respondent is unfair, unreasonable and unjust and such proposed practice will result in great economic loss and irreparable injury to the complainant and will be against and contrary to the general public welfare.

The bill of complaint alleges that the construction of a distribution system within the extended area to duplicate the distribution system of the complainant would not be an ordinary extension of the existing electrical system of the Alabama Power Co. made in its usual course of business. The Alabama Power Co. has not made application to the Alabama Public Service Commission for a certificate of convenience and necessity to authorize the respondent to duplicate the distribution system of the complainant within the extended area. Irreparable harm, damage and injury will follow and be done to the complainant unless the acts and conduct of the respondent, complained of, are enjoined. Complainant prays that the respondent be enjoined from duplicating the lines of the complainant within the extended area and that the respondent be enjoined from delivering electrical energy to any persons within the extended area who can obtain electrical energy from the distribution lines of the complainant.

■ I. It is seriously insisted by the appellee that the appellant has no standing to require the appellee to secure a certificate of convenience and necessity before extending its lines into the territory annexed to the City of Thomasville. The idea is that the present bill should have been instituted either by the Alabama Public Service Commission or by the State of Alabama through its properly qualified officers. We do not believe as a general principle that the legislature intended to enact a law under which the appellant and others similarly situated might be incorporated with certain rights common to corporations including the right of eminent domain and then was to be left defenseless and without the right to invoke the ordinary remedies of the courts of the state. It seems to us to hold otherwise

would render completely nugatory and meaningless the words in the charter of appellant "to sue and be sued". As we see it the question now before this court is not whether Clarke-Washington should be brought within the jurisdiction of the Public Service Commission by an amendment to the law governing the Commission so far as cooperatives are concerned but rather whether the appellee, which is subject to the Alabama Public Service Commission law, should comply with the requirements of that law. It is insisted by the appellant that the Alabama Power Company should not extend its lines within the territory annexed to the City of Thomasville unless it first secured a certificate of public convenience and necessity from the Alabama Public Service Commission. We need here to refer to a decision rendered by this court which is styled Alabama Power Company v. Southern Pine Electric Cooperative, 270 Ala. 453, 118 So.2d 907. It is argued by the appellant in the instant case that the majority opinion in that case has determined the question now before us. This is not correct. The majority opinion decided that case only on the theory that § 332, Title 48, Code of 1940 should not be construed under the facts presented in that case as requiring certificates of public convenience and necessity in order to engage in the activities of the kind shown by the records in that case. The majority of the court expressly refrained from deciding the issue which we are now discussing in the case at bar.

In the present case the appellee seeks to persuade this court of the unfairness of a decision which would require the appellee to secure a certificate of convenience and necessity "for a simple, ordinary extension of its facilities within the corporate limits of Thomasville" while the appellant "an unregulated general welfare cooperative" is not required to do the same. We think that this is a legislative question.

If the appellee has invaded the property rights of the appellant then we consider that the appellant should have the right of legal redress in the appropriate courts in this state. The fact that the appellant is exempted from the regulation of the Alabama Public Service Commission jurisdiction does not change this situation, but if a change should be made, this is a matter which should be addressed to the wisdom and judgment of the legislature of Alabama. Springfield Gas & Electric Co. v. City of Springfield, 292 Ill. 236, 126 N.E. 739, 18 A.L.R. 929; 257 U.S. 66, 42 S.Ct. 24, 66 L.Ed. 131; Frost v. Corporation Commission of Oklahoma, 278 U.S. 515, 49 S.Ct. 235, 73 L.Ed. 483; Payne v. Jackson City Lines, 220 Miss. 180, 70 So.2d 520; State ex rel. Seattle & R. V. R. Co. v. Superior Court for King County, 123 Wash. 116, 212 P. 259; Warehouse Distributing Corp. v. Dixon, 97 Ind.App. 475, 187 N.E. 217; Jacksonville Bus Line Co. v. Watson, 349 Ill.App. 462, 110 N.E.2d 834.

■ II. It is argued by the appellee that it does not need a certificate of convenience and necessity to extend its facilities into the annexed area of the City of Thomasville. In support of this position appellee submits that § 332, Title 48 of the Code, requiring a certificate of convenience and necessity excepts "ordinary extensions of existing systems in the usual course of business." Further it is submitted that § 30, Title 48 of the Code renders inapplicable the requirement of § 332. Section 20, Title 48 of the Code provides in part as follows:

"Nothing in this title is intended or shall be construed * * * in respect of matters other than rates and service regulations and equipment, over which exclusive jurisdiction is conferred by this title upon the commission to affect existing rights and powers or rights and powers hereafter acquired by municipalities under valid contracts with utilities; * * * or to require the discharge by utilities of their respective duties within such municipalities, whether arising out of contract with the municipality or by statute or regulation by the commission or otherwise."

604

■ Appellee relies on those grounds of the demurrer asserting that respondent has been granted a franchise by the City of Thomasville to erect electrical facilities in the corporate limits of the city and argues that the court will take judicial notice of orders and reports of the Alabama Public Service Commission authorizing the rights and obligations under which appellee operates in the City of Thomasville. We do not think that these grounds of the demurrer are proper since they are what is known as speaking demurrers, presenting matter that should be presented by an answer. Sumner v. Caldwell, 245 Ala. 568, 18 So.2d 87; Blythe v. Enslen, 219 Ala. 638, 123 So. 71. Furthermore we do not consider that on demurrer we should take judicial notice of facts alleged to be shown in various case files in the proceedings of the Alabama Public Service Commission. This court has held that administrative interpretation must appear from the pleading or evidence. On appeal from a decree on demurrer an administrative interpretation not alleged in the bill will not be considered. State of Alabama v. Robinson Land & Lumber Co., 262 Ala. 146, 77 So.2d 641. It was proper to overrule the demurrer in this respect.

■ III. The appellee advances the same position of lack of necessity to obtain a certificate of convenience and necessity by virtue of Sections 20 and 332 of Title 48 but upon different grounds of demurrer and different treatment of the allegations of the bill. These grounds are in effect that for aught appearing respondent has an electric franchise in the City of Thomasville and in the extended area. It is argued that with respect to this the bill alleges only that appellee has not obtained a certificate of convenience and necessity from the Alabama Public Service Commission to duplicate service in the extended area.

The bill alleges that "The Alabama Power Company is a public utility corporation organized under the laws of the State of Alabama, with its principal place of business in Birmingham, Jefferson County, Alabama. The Alabama Power Company is now engaged in business in Clarke County, Alabama."

The bill alleges that respondent has not obtained a certificate of convenience and necessity from the Alabama Public Service Commission. There is, as argued by appellee, a complete absence of allegation that appellee has no franchise from the municipality or that it is or has acted unlawfully in any manner other than failure to obtain a certificate of convenience and necessity from the Alabama Public Service Commission. Construing the bill most strongly against the pleader, we must assume that appellee has complied with the Constitution and statute in its operations within the municipality. If then, appellee is rightly and lawfully operating within the corporate limits of the City of Thomasville and has an appropriate franchise from the municipality, then it has no duty to obtain a certificate of convenience and necessity from the Alabama Public Service Commission in view of Sections 20 and 332, Title 48, supra. The demurrer in this respect should have been sustained.

■ IV. The appellant takes the position that it is lawfully occupying and serving the extended area. The allegation of the bill shows that the complainant (appellant) began in 1940 to construct electric distribution facilities in the area south and west of the corporate limits of the City of Thomasville as they existed at that time, and, further, that at the time of the filing of the present bill of complaint its distribution system was valued at $15,000 and was delivering electric service to 117 consumers.

It is further alleged that the complainant was organized under Title 18, Chapter 2, Code of 1940 and subsequent to 1937 was converted to a corporation under Chapter 3 of that Title. Since the complainant ceased to operate under the provisions of Chapter 2 (1935 Act) the scope of the right to use the roads and highways of Clarke County are not applicable. On the contrary, the

corresponding provisions of Chapter 3 (1939 Act) are pertinent.

Section 33, Title 18 which grants to appellant the right to construct its facilities upon public highways reads in part as follows:

" * * * to construct, maintain, and operate electric transmission and distribution lines along, upon, under, and across all public thoroughfares, including without limitation all roads, highways, streets, alleys, bridges, and causeways, and upon, under, and across all publicly-owned lands; *provided, however, that the respective authorities having jurisdiction thereof shall consent thereto,* * * *." (Emphasis added.)

As the State of Alabama and the Court of County Commissioners of Clarke County have consented to appellant's use of the roads and streets of Clarke County, the appellant concludes it has franchise rights. We think this is correct so long as the particular area is solely within the jurisdiction of the county and not within the limits of an incorporated municipality. It seems to us that when any area of a county becomes a part of a municipal corporation, Section 33 of Title 18 must yield to Section 220 of the Constitution of Alabama of 1901 which provides as follows:

"No person, firm, association, or corporation shall be authorized or permitted to use the streets, avenues, alleys, or public places of any city, town, or village for the construction or operation of any public utility or private enterprise, without first obtaining the consent of the proper authorities of such city, town, or village."

The proviso which we have emphasized in the quotation of Section 33 appears to have been inserted in order to comply with Section 220 of the Constitution of Alabama of 1901. In support of its position the appellant cites two cases which we should carefully examine.

In City of Prichard v. Alabama Power Company, 234 Ala. 339, 175 So. 294, the city sought a mandatory injunction to compel the power company to remove its poles and wires from the public streets on the grounds that they constituted a public nuisance. The case was not concerned with competition between utilities. The power company had constructed its electric facilities in an area later incorporated as the City of Prichard. This court held that the maintenance of the facilities on the streets was not a public nuisance, and further, since the facilities were constructed prior to the time the area became incorporated, Section 220 of the Constitution had no application.

In Town of Fultondale v. Clelland Bus Lines, 254 Ala. 225, 48 So.2d 21, the city attempted to cause the defendant to cease operating its bus service. The case was not concerned with competition between bus companies. The bus company had operated under a certificate of public convenience and necessity granted by the Alabama Public Service Commission prior to the time the unincorporated area became the Town of Fultondale. This court again declared that the activities of the defendant were lawfully begun prior to incorporation and Section 220 of the Constitution had no application. It seems that the appellant in the instant case relies strongly on these two cases and Section 33 of Title 18 to support its right to maintain an exclusive area of service in the extended area of Thomasville.

We do not consider, however, that these two cases are apt authorities in the instant case. Each of these cases deals with an area which had not been incorporated, in one case when the facilities had been constructed and in the other when the activities had begun. Neither case deals with an area annexed to an existing municipal corporation.

In Farmers Electric Co-operative Corporation v. Arkansas Power & Light Company, 1952, 220 Ark. 652, 249 S.W.2d 837, 839, the Town of Newport was being serv-

ed under a franchise by Arkansas Power. The city, in order to meet its growing needs, annexed a considerable amount of territory adjacent to the corporate limits, which was being served by the Farmers Co-op. The public service commission had expressly assigned the territory adjacent to the city to the Co-op. In our case, appellant is claiming the adjacent territory, now within the corporate limits, as its exclusive area of service. The court determined that Arkansas Power had not only the privilege but the obligation to supply power to the newly annexed areas of the city, and further, that even though the territory adjacent to the city had been specifically assigned to the Co-operative, such assignment must give way to the growth of the city, by saying:

" * * * The territory assigned appellant was contiguous to the city. The normal trend of a town or city is to build, hence one claiming rights pertaining only to rural territory enters such an area with notice that the municipal corporation will very likely expand, as Newport did in this case. An anomalous situation would result if it should be judicially determined that rights essentially rural could not be disturbed by city expansion. * * * "

The facts of this case are more clearly in point than those of the Prichard case. See also Arkansas Electric Cooperative v. Arkansas-Missouri Power Company, 1953, 221 Ark. 638, 255 S.W.2d 674, at page 677.

Whitaker v. Louisville Transit Co., Ky. 1955, 274 S.W.2d 391, is an appropriate parallel to the Fultondale case. Blue Motor Coach Line had maintained bus service between Camp Taylor, a suburb of Louisville, and downtown Louisville since 1935. Louisville annexed approximately 95 per cent of the Camp Taylor area. Louisville Transit Company had operated public transportation in the City of Louisville since 1890 and subsequent to the annexation began to operate in the annexed area. The Kentucky Constitution confers upon cities the right of final decision as to whether a public utility may use or occupy the city streets. The court determined that the rights of the parties became fixed as a matter of law when the Camp Taylor area was annexed in June, 1950. In holding that Louisville Transit had the right to serve the newly annexed area, the court stated at page 394:

"Moreover, there can be no doubt that Transit's franchise covers not only the territory within the boundaries of the city at the time the franchise was let, but also such additional territory as may from time to time be annexed by the city. In Truesdale v. City of Newport, Ky., 90 S.W. 589, 590, [28 Ky.Law Rep. 840] it was said 'the limits of the city year by year determine the limits of the contract.' "

See also State ex rel. Southwestern Gas & Electric Co. v. Upshur Rural Electric Cooperative Corporation, 1957, 156 Tex. 633, 298 S.W.2d 805, reversing Upshur Rural Electric Cooperative Corporation v. State, Tex.Civ.App.1956, 289 S.W.2d 819, where the power company, though failing in its efforts to require the cooperative to remove its facilities from a newly annexed area in Gilmer, Texas, was clearly able to serve the annexed area. The cooperative was restricted to those customers it was serving at the time of annexation.

We believe that there is a logical distinction between the Prichard and Fultondale cases and those which we have discussed above. If appellant is allowed to maintain its facilities exclusively in the extended area it will deny the city the right to expand and this principle, if established, could apply to a great many things other than electric service. The Prichard case supports the idea that Section 220 of the Constitution cannot act retroactively, but the Prichard case does not restrict the prospective or future operation of the Constitution. It certainly seems to us that one of the reasons why persons in suburban

areas choose annexation to an existing municipality is to receive the benefits which persons in the municipality have, such as police protection, fire protection, and the various utility services that are rendered to the residents of a city. Of course, with the receipt of these benefits persons in the annexed area become obligated to share their appropriate part of the cost of city government. It does not seem reasonable to us that where such persons are required to support the city financially there should be withheld from them the benefits of the various services which come from annexation to the city. With reference to the obligation of a public utility lawfully operating within the corporate limits of a municipality to serve all customers desiring its service in any area subsequently annexed to such municipality we refer to some of the authorities. Truesdale v. City of Newport, 1906, 90 S.W. 589, 28 Ky.Law Rep. 840; City of Raleigh v. Carolina Power & Light Co., 1920, 180 N.C. 234, 104 S.E. 462; Tulsa St. Ry. Co. v. Oklahoma Union Traction Co., 1910, 27 Okl. 339, 113 P. 180; Harlan v. Town of Bel Air, 1940, 178 Md. 260, 13 A.2d 370.

We conclude that the appellant does not have the exclusive right to perform its services in the "extended area".

V. The allegations of the bill show that the parties agreed in 1946–1947 that the area south and west of Thomasville would be the exclusive service area of complainant and that such agreement was "supplemented and reenforced" by Section 16 of a written contract between the parties dated May 20, 1953. The only allegation in the bill relating to the 1946–1947 agreement is the following:

"* * * In or about the years 1946–1947 the respondent agreed with the complainant that the territory lying south of the corporate limits of the City of Thomasville along U. S. Highway 43 and the territory west of the corporate limits of the City of Thomasville lying along the old Grove Hill-Choctaw County public road should constitute territory, or service area, to be served exclusively by the complainant."

The allegations of the bill further show that the parties are now operating under contract executed by the parties dated May 20, 1953. It is a familiar principle that a party alleging a violation of a modified or changed contract must rely upon the contract as so modified or changed. McClendon v. Eubanks, 249 Ala. 170, 30 So.2d 261; Sibley v. Barclay, 14 Ala.App. 422, 70 So. 201, certiorari denied 195 Ala. 694, 70 So. 1012; Dunaway v. Roden, 14 Ala. App. 501, 71 So. 70, certiorari denied 196 Ala. 701, 72 So. 1019. It seems clear to us that the appellant must rely on the 1953 contract and not on the 1946–1947 agreement. In other words, it is our view that the contract of May 20, 1953 instead of merely supplementing and reenforcing the 1946–1947 agreement expressly rendered it in part null and void. It will be recalled that in the 1953 contract Section 16 of that agreement which has been hereinabove set forth contains the following stipulation:

"* * * The provisions of this Section 16 shall not apply to service by either party to any customer who is located within the corporate limits of a municipality in which such party has an electric franchise."

To put the matter a little differently, we think it clear that the foregoing excerpt from Section 16 supersedes any agreement theretofore made where operations under a franchise in a city is concerned. It is argued by the appellant that the foregoing portion of Section 16 is applicable only to the corporate limits of a municipality as they existed on the date of the contract. As we have heretofore undertaken to show where there has been an annexation of territory and an enlargement of corporate limits the contracts, rights, benefits, ob-

**608**

ligations, etc. of municipalities are determined by the boundaries as they change from time to time. There was, therefore, no need to phrase the foregoing excerpt from Section 16 so as to make it have a future or prospective operation. On the contrary, it has such an operation as a matter of law and the parties contracted with reference thereto.

■ We agree with the appellee that the appellant is estopped by the contract of 1953 from taking a position which we think is inconsistent with the contract of 1953. In this connection, we point out that the office of estoppel by contract is to preclude a party from taking an inconsistent position to another's prejudice and this is recognized in Alabama. Stocks et al. v. Inzer, 232 Ala. 482, 168 So. 877. To summarize, it is our conclusion that when the allegations of the bill as amended are construed most strongly against the pleader the allegations show that the alleged agreement of 1946–1947 was modified by Section 16, that appellee has not breached Section 16 and that appellant is thereby estopped to take a position inconsistent with the agreement of 1953.

It appears from the record in the citation of appeal that the City of Thomasville has intervened. The rights vel non of the City of Thomasville to intervene in this litigation is not an issue on this appeal. For that reason statements with reference to the intervention of the City of Thomasville are not a part of this record.

We conclude that the decree of the lower court should be upheld.

Affirmed.

LIVINGSTON, C. J., concurs in the result.

LAWSON and MERRILL, JJ., concur.