THE MONTANA POWER COMPANY, a Montana Corpora-
tion, Plaintiff and Respondent, v. FERGUS ELECTRIC
CO-OPERATIVE et al., Defendants and Appellants.

No. 11177.
Submitted January 11, 1967. Decided March 21, 1967.
425 P.2d 329.

J. E. McKenna, Lewistown, Hoyt & Bottomly, Great Falls, Richard V. Bottomly (argued), Great Falls, for appellants.

James C. Wilkins, Jr. (appeared), Lewistown, William Coldiron and Robert D. Corette (appeared), Butte, John C. Hauck (argued), Butte, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal from a judgment which restrains and enjoins the defendants from supplying electric current or service to the property of the Peavey Company at Lewistown, Montana.

The plaintiff-respondent is the Montana Power Company, a Montana corporation, and will be referred to as the Company. The defendants-appellants are the Fergus Electric Co-operative, Inc., a non-profit, membership corporation organized under the laws of Montana, and its manager, C. W. Rader, and will be referred to as the Co-operative.

The issue presented by this appeal is whether electric current and service was available to the Peavey Company property from existing facilities and plants of the Company.

This action was tried to the district court, sitting without a jury, on an agreed statement of facts. Included in this statement of facts was a map of the area in which both parties sought to provide electric service. This map was marked Exhibit A. In order that a more meaningful discussion of this case might be accomplished, we have taken portions of Exhibit

EXHIBIT A

A and reproduced them. In the reproducing process we have not been able to reproduce the color used in the exhibit. Thus, an explanation of the LEGEND must be made.

As the LEGEND indicates, there are only two co-operative lines shown on the exhibit. They are a 12.5 KV Distribution Line-3∅ and a 7.2∅ KV Distribution Line-1∅. The 12.5 KV Distribution Line-3∅ is the line running into Miller Slaughter House. The 7.2 KV Distribution Line-1∅ is the line which joins the 12.5 KV Line at a point just north of the Miller Slaughter House and runs approximately parallel to State Highway No. 19 and branches just past the point at which it crosses the C. M. St. P. & P. R. R. Despite the loss of the color, the LEGEND is accurate if one keeps in mind the explanation just given. Although the reproduction of Exhibit A is not complete, it adequately represents the area concerned, and we will refer to the reproduction simply as Exhibit A.

In September 1965, the Peavey Company acquired a tract of land about 1½ miles from Lewistown, as shown on Exhibit A, as a site for the construction of a commercial grain elevator, feed mixing plant, and store. The Peavey Company would require single-phase electric service during the construction of its facilities and three-phase electric service for the operation of its business.

In September of 1965, as shown by Exhibit A, the company had three-phase electric lines on three sides of the general area; a line constructed in 1912 on the south edge of the quarter-section, some 2,000 feet from the Peavey Company property; a line acquired in 1958 on the east side of the quarter-section; and a line constructed prior to 1929 about one mile to the west; of the Peavey Company property. The Company was serving customers in the area.

The Co-operative's electric lines at that time, as shown by Exhibit A, consisted of a single-phase line which was across the railroad tracks and highway from the Peavey Company property. There was a service pole located 210 feet from the

Peavey Company property from which pole a line extension could be run. The Co-operative's nearest source of three-phase service was located near the Miller Slaughter House, about one mile from the Peavey Company property.

When the Peavey Company announced its construction plans, both the Company and the Co-operative offered to supply the required electric service.

On December 8, 1965, the Company commenced construction of a three-phase line, as shown by Exhibit A, to the Peavey Company property. This line extends a distance of some 2,062 feet and was completed on December 17, 1965.

On December 16, 1965, the Co-operative began construction of a line to the Peavey Company property. On December 20, 1965, the Company began this legal action and obtained a temporary restraining order from the district court. The Co-operative was served with the necessary legal papers that same morning.

The question as to which party had the legal right to serve the property of the Peavey Company was now before the district court.

Section 14-502, R.C.M.1947, is relevant to the decision of this case and reads in part: "Cooperative, non-profit, membership corporations may be organized under this act for the following purposes:

"(a) For the purpose of supplying electric energy and promoting and extending the use thereof in rural areas, in which electrical current and services are not otherwise available, from existing facilities and plants; * * *."

This section has been interpreted by this Court in prior decisions. In Montana Power Company v. Park Electric Co-op., 140 Mont. 293, 300, 371 P.2d 1, 5, we commented as follows:

"It is observed that Montana's statute, section 14-502 is more restrictive than any similar statute in other states. It spells out the limits of the Co-operative service, restricting it to rural areas *and* where service is not otherwise available from existing

facilities and plants. The Legislature has used restrictive language. The public policy declared is one for the Legislature and not for this court."

Thus, under section 14-502, the Co-operative could not legally serve the Peavey Company property unless there was no service available from existing facilities and plants.

The Company provided the Peavey Company property with the required electric service by the construction of a line some 2,062 feet in length. For the Co-operative to provide the requisite three-phase service, construction of more than one mile would be necessary. The Court is aware that the co-operative's single-phase line could have been utilized to provide the three-phase service by making some additions to the existing poles, but the fact remains that these alterations would span a distance of more than one mile.

■■ We are not establishing distance as the only criteria in determining whether electric service is available from existing facilities and plants. In this case, it is an important fact, but we realize there may be other situations in which it will not be the determining factor. A careful study of Exhibit A reveals that the Company was serving other customers in the same quarter-section in which the Peavey Company property is located and in the quarter section immediately to the west of the Peavey Company property. Taking all the factors into consideration, that is, the type of existing Company facilities surrounding the Peavey Company property, the existence of other Company customers in the immediate area, the distance each party would have to extend its service to supply the Peavey Company property, we come to the same conclusion as the district court that electric service was available to the Peavey Company property from existing facilities and plants of the Company.

The Co-operative was beyond the limits defined by the Legislature in section 14-502, and the district court was correct in

its judgment restraining the Co-operative from providing electric service to the Peavey Company.

The Co-operative contends that the Company was not entitled to injunctive relief since the Company was allegedly in violation of Railroad and Public Service Commission Schedule LE-50 when it constructed its line to the Peavey Company property. The Co-operative takes the position that Schedule LE-50 limits free extension by the Company to 800 feet for three-phase service to a general service customer such as the Peavey Company and requires a customer to pay for all costs of line extension beyond 800 feet. It is admitted that the Company constructed the three-phase service to the Peavey Company property without cost to the Peavey Company and that such construction covered more than 800 feet. However, the Company meets the contention of the Co-operative by stating that Schedule LE-50 establishes a minimum distance that the Company MUST make free construction and does not limit the length of free construction that the Company CAN make if the customer is financially worthwhile from the Company's standpoint. The Company further contends that this is the manner in which the Railroad and Public Service Commission interprets the Schedule. Thus, the Co-operative alleges violation of Schedule LE-50, and the Company denies it. If the Co-operative has been injured by this alleged violation, it should properly present its complaint to the Railroad and Public Service Commission. Therefore, we find no merit in this contention.

The remaining issues presented by the Co-operative have either been previously decided adversely to the Co-operative point of view by its own admission, or they have no place in this case on the basis of the facts presented in the agreed statement of facts. We have carefully considered each of these issues and find them all without merit.

The judgment appealed from is affirmed.

MR. JUSTICES ADAIR, DOYLE and CASTLES concur.

MR. JUSTICE JOHN CONWAY HARRISON:

I concur in part and dissent in part.

Mr. Justice Freebourn, speaking for a unanimous court in the case of Sheridan County Electric Co-op, Inc. v. Montana-Dakota Utilities Co., 128 Mont. 84, 270 P.2d 742, said in construing the Rural Electric Cooperative Act, sections 14-501 to 14-531, R.C.M.1947, to determine whether or not the REA had exclusive rights in rural areas to provide electrical energy:

"Under the provisions of this Act the plaintiff has a right to provide electric energy to the designated rural areas. Nowhere in said Act, however, can one find anything which, by express words or by implication, indicates that the Legislature intended to give an exclusive right to plaintiff to furnish electric energy in such rural districts. To the contrary, the plain wording of R.C.M.1947, § 14-503, indicates the opposite intention and limits the right of plaintiff to provide electric energy, in such rural areas, to certain users, § 14-503 providing: 'A cooperative shall have power: * * * (d) To generate, manufacture, purchase, acquire, and transmit electric energy, and to distribute, sell, supply and dispose of electric energy in rural areas to *its members, to governmental agencies and political subdivisions, and to other persons not in excess of ten per centum (10%) of the number of its members.'*

"Had our lawmakers intended that co-operatives should have the exclusive right to furnish electric energy in such rural areas, and thus prevent competition by other authorized electric public utility, they should have used clear and apt words to so declare. Certainly, no such far reaching right can be left to implication or inference. * * *

"* * * It is also a well-known rule of construction that so long as the language of the statute or ordinance is plain and unambiguous, it is not subject to interpretation or open to construction, but must be accepted and enforced as written."

We have carefully, for some twenty years followed the dictate of this opinion, which in its broadest sense does not allow

an REA co-op to compete in a city, where the utility has a franchise to provide electric energy, but does allow such public utility to compete with REA co-ops in rural areas where the public facilities are available.

There has developed in the past few years, with the urbanization of this state, another class of cases where co-op facilities and public utility facilities compete due to the expanding of the city area into what was once clearly a rural area serviced by REA. Though these problem conditions have been obvious for some five years and this court has had to rule on two such cases the legislature has so far failed to provide legislative guidance to meet the problem. Montana Power Co. v. Vigilante Electric Co-op, 143 Mont. 119, 387 P.2d 718; Montana Power Co. v. Park Electric Co-operative, 140 Mont. 293, 371 P.2d 1. This court pointed out in the Park Electric case, supra, that "The public policy declared" by the Legislature fixing the limits of co-operative electric service "is one for the Legislature and not for this court."

However, concerning the facts presented in this case I view them differently than the majority. As has been pointed out the Peavey Company was located a mile and a half from Lewistown, in an area serviced both by the REA and the Montana Power Company. Both wanted to provide the service to this new plant so both entered into negotiations for the business. At this point, as I understand the law, they legally could compete for the business. On December 6, 1965, the appellant alleges that the Peavey Company chose the REA and that in addition they joined the cooperative as a member. While the respondent public utility denies this, alleging that the membership card was not delivered until a later date, the fact remains clear that the Peavey Company did join at sometime and a reasonable assumption can be made that they joined when appellant alleges in order to benefit from the rates offered. Too, the appellants' brief indicates that upon learning this fact the public utility rushed to completion its line finishing on

December 20th at which time it filed its restraining order preventing the REA from completing its line into the plant to provide Peavey with electric service.

Viewing these facts, and they do not appear to be seriously controverted by the public utility we have a situation on December 20, 1965, where the Peavey Company who was either a member of the Co-op or who had applied for membership but not in possession of a membership card being denied service from the Co-op: Even more seriously do we have what appears to me to be the reverse of the Park County Electric Co-op case, supra.

For these reasons I disagree with the fact-holding of the majority in this case.