YELLOWSTONE VALLEY ELECTRIC CO-OPERATIVE, INC., A CORPORATION, PLAINTIFF AND APPELLANT, *v.* THE MONTANA POWER COMPANY, A CORPORATION, DEFENDANT AND RESPONDENT.

No. 11373.
Submitted January 12, 1968. Decided February 1, 1968.
437 P.2d 5.

Jones, Olsen & Christensen and Paul G. Olsen (argued), Billings, Hubert J. Massman (argued), Helena, for appellant.

Crowley, Kilbourne, Haughey, Hanson and Gallagher and Cale J. Crowley (argued), Billings, William H. Coldiron and John C. Hauck, Butte, for respondent.

MR. CHIEF JUSTICE JAMES T. HARRISON delivered the Opinion of the Court.

This is an appeal by plaintiff from an adverse summary judgment entered by the district court of Yellowstone County in plaintiff's action wherein it sought to enjoin defendant Power Company from extending its service and providing electricity to one whose residence had been previously served by the plaintiff.

Briefly, the fact situation is that plaintiff was supplying electrical service to a certain rural residence in Yellowstone County for approximately a year and one-half; that there was a change in possession of the residence and the new resident had not applied for, paid for, nor received a membership in the plaintiff cooperative; the resident voluntarily of his own choice notified plaintiff that he wanted to change service from the plaintiff to the defendant; that defendant received a written application from the resident to supply electrical service to the residence and defendant then extended its electrical distribution line to the premises and is ready, willing and able to supply such service.

Defendant moved for summary judgment on the ground that there was no genuine issue as to any material fact, and that under the material facts alleged and deemed admitted the plaintiff had no claim upon which any relief could be granted against defendant. The district court granted the motion and judgment was entered in favor of the defendant. This appeal followed.

There is but one issue in this cause. Plaintiff puts it this way in its brief:

"The interpretation of the 'Rural Electric and Telephone Cooperative Act,' supra, given in the Sheridan, [128 Mont. 84, 270 P.2d 742,] and Vigilante [143 Mont. 119, 387 P.2d 718,] cases appears to have decided that: .

"(1)   A co-operative and a utility company may freely com-

pete in a rural area except that the co-operative may not offer service where there are existing facilities, and;

"(2)   A co-operative which has acquired a customer pursuant to statute *may* continue to serve that customer although the area may have since become urban in character but no new customers may be acquired thereafter.

"The question that was not reached by either the Sheridan case or the Vigilante case is whether the right of a utility company to compete in a rural area may be exerted to the exclusion of the co-operative's right to continue to serve existing customers rightfully acquired."

Plaintiff admits that the Sheridan case is very clear with regard to R. E. A. where it says at p. 86 of 128 Mont., 270 P.2d at p. 743:

"Nowhere in said Act, however, can one find anything which, by express words or by implication, indicates that the legislature intended to give an exclusive right to plaintiff to furnish electric energy in such rural districts * * *." Therefore the plaintiff states it is not again contending that the co-op has an exclusive right to all customers in rural areas.

There is no statutory authority for the position taken by the plaintiff, in fact their whole argument is based upon what the "legislature must certainly have intended that the rural electric co-operatives created under the Act would have the ability to accomplish * * *. The Legislature could not have intended the rule contended for by the Utility Company * * *."

And again: "A rule which recognizes the right of the rural electric co-operative to keep those customers rightfully acquired promises to give stability to a now uncertain situation. The provision that a customer rightfully acquired may be kept is simple, straight forward and leaves no question as to how the parties may proceed and what result they can expect in the future. *This rule is a natural and logical extension of the Vigilante case, supra.*" (Emphasis ours.)

Defendant states it is. supervised and regulated by the Pub-

lic Service Commission of Montana under the applicable laws; that it is authorized to install its plants and appliances necessary for service, and to construct electric power lines from point to point along and upon any of the public roads, streets and highways in the state. Section 70-301, R.C.M.1947.

It should be noted here that this section also contains this admonition: "But the same shall be so constructed as not to incommode or endanger the public in the use of said roads, streets, or highways, and nothing herein shall be so construed as to restrict the powers of city or town councils." Plaintiff contends that by these words the defendant is forbidden to construct electric power lines unless they are necessary and do not incommode the public, and a trial should have been allowed to determine issues of fact relating to the necessity of the installations complained of by the cooperative and the effect on the public. There never was any issue raised that the lines constructed by the defendant incommoded or endangered the public. The words of admonition clearly have no other purpose.

When this matter was being presented in the district court the same arguments were made by the plaintiff and the court filed a memorandum with the order granting the motion for summary judgment, wherein it is stated:

"In the brief in opposition to the motion for summary judgment, the plaintiff makes this statement:

" 'The plaintiff does not intend (contend) that it should have the exclusive right to furnish electric energy in rural areas inasmuch as the Supreme Court of the State of Montana has decided that question; but this plaintiff does strongly submit to this Court that when it has the purpose in law to supply electric energy, and to promote and extend the use thereof in rural areas and that when it then sets out on an expensive and costly program of the erection and operation of electric distribution lines to certain *customers*, that then it acquires certain *rights* and *privileges* with regard to those certain con-

nected *customers*. The plaintiff submits that the law gives it a purpose along with statutory powers to effect that purpose; and once the cooperative is set out upon its purpose and has exerted its powers for long duration, then certain rights attach.'

"From the above statement it appears that the plaintiff takes the position that the Court may foreclose the customer, who is using the electrical energy in this particular instance, from freedom of choice as to who shall furnish its product, the plaintiff or the defendant.

"In view of the admission of the plaintiff in the first portion of the above statement, it would appear that, in the absence of applicable authority, the position of the plaintiff is inconsistent with his declaration. In any event, the Supreme Court in numerous decisions following the case of Sheridan County Electric Co-op., Inc., v. Montana-Dakota Utilities Co. (1954), 128 Mont. 54 [84], 270 P.2d 742, has consistently held in numerous cases cited by defendant that there is no exclusive franchise to serve customers free of competition from any public utilities in any areas of Montana in which the cooperative has been previously authorized to furnish services.

"It seems to me that the decisions of the Supreme Court in these cases are so clearly against plaintiff's position that there is no room for argument.

"The last-decided case, Montana Power Company v. Fergus Electric Cooperative, 149 Mont. 258, 425 P.2d 329, is so recent it hardly seems possible there is any change in the well-established rule in Montana that there are no conditions under which a person in the position of the plaintiff can prevail.

"It seems to the Court that in order for the plaintiff to obtain any relief it will be necessary for it to go to the Legislature."

How it could be more succinctly stated is hard to conceive.

Plaintiff apparently sets forth its goal in undertaking this litigation in the previously emphasized portion of its brief,

being an extension of the doctrine set forth in the Vigilante case. In Vigilante, the defendant here was the plaintiff and attacked the right of cooperatives to service customers it already had and we held that the authority of a cooperative to service a customer in an area was not lost by a change of status of that area from rural to urban. Now it is the cooperative, whose rights were protected, that attacks the Montana Power Company, and asks this court to extend our pronouncements in Vigilante to cover their present contention. There was authority for the position we adopted in Vigilante as one will discern from a reading of the opinion. Here we are not cited to a single case where the contention of the cooperative has been adopted.

We refuse to extend the Vigilante doctrine.

The judgment is affirmed.

MR. JUSTICES HASWELL, ADAIR, CASTLES and JOHN CONWAY HARRISON concur.