THE MONTANA POWER COMPANY, A MONTANA CORPORATION, PLAINTIFF AND APPELLANT, *v.* SUN RIVER ELECTRIC COOPERATIVE, INC., A CORPORATION, AND R. K. HANSON, AS MANAGER OF SUN RIVER ELECTRIC COOPERATIVE, INC., DEFENDANT AND RESPONDENT.

No. 12010.
Submitted June 15, 1971.
Decided July 13, 1971.
Rehearing Denied July 23, 1971.
487 P.2d 307.

William H. Coldiron, argued, Butte, Jardine, Stephenson, Blewett & Weaver, John H. Weaver, argued, Great Falls, for plaintiff-appellant.

Patrick Gilfeather, Graybill, Graybill, Ostrem & Warner, Lee Graybill, Jr., argued, Great Falls, for defendant-respondent.

MR. JUSTICE HASWELL delivered the Opinion of the Court.

Plaintiff appeals from a judgment of the District Court of Pondera County denying it a permanent injunction prohibiting defendant from supplying electrical power to a contractor.

Plaintiff is an electric utility company holding a nonexclusive franchise to supply electrical power and service anywhere in the state of Montana. Defendant is an electric co-operative organized under the provisions of Title 14, Chapter 5, Revised Codes of Montana, 1947, as amended, authorized to supply electrical power and service in rural areas where it is not otherwise available from existing facilities and plants.

The controlling issue upon appeal is whether defendant may legally supply electrical power and service to the contractor under the facts of this case.

The essential facts are undisputed and incorporated in the district court's findings of fact. During the spring of 1970, bids were let for construction of a Missile Site Radar (MSR) installation in a rural area, approximately 12 miles east of Conrad, Montana. The contract was awarded to Watson Construction Co. in April 1970, and the contractor required electrical power and service for construction purposes as soon as practicable thereafter. The need for such service was first contemplated in April

1970 by Watson Construction Co. and other contractors bidding on the project, at which time requests for such service were made by them to defendant. Plaintiff first contemplated furnishing such service to the successful bidder and contractor about April 27, 1970, although it had not been requested to furnish such service by Watson Construction Co. or other contractors bidding on the project.

At the time service was contemplated, defendant had facilities and plant adequate and suitable for supplying the necessary electrical power and service to the contractor, its existing lines being within 3,400 feet of the construction site with 7,200 volt, 3 phase service available with capacity to furnish 1,000 KVA at the site. Plaintiff had existing lines some six miles from the site, from which 7,200 volt electrical service was available.

Defendant was serving a customer approximately 1/4 mile from the site and had several other customers in the immediate area of its existing lines. Plaintiff's nearest customer was six miles from the site.

Defendant constructed a hookup to the construction site from its existing transmission line and service was available to the contractor on May 21, 1970. Plaintiff constructed a hookup from its existing line to the construction site between May 25 and May 28, 1970, and also made improvements in its existing line from Conrad to a point six miles from the construction site. Plaintiff supplied temporary power by means of portable generators at various times after May 29, 1970, and was able to supply permanent power after June 18, 1970.

Watson Construction Co. requested defendant by letter of May 15, 1970, to furnish it with electrical power and service at the construction site. On May 22, 1970, a temporary restraining order from the district court was secured by plaintiff restraining defendant from furnishing the contractor such electrical power, which order remained in effect thereafter until final judgment by the district court. Following issuance of the temporary restraining order Watson Construction Co. contracted with

plaintiff for the necessary electrical power and service on May 28, 1970.

On January 19, 1971, the district court, on the basis of the foregoing facts, concluded that at the time service was contemplated in April 1970, electrical power and service was not available from plaintiff and was available from defendant and accordingly defendant was legally authorized to furnish electrical power and service to the contractor. Judgment was entered by the district court on January 20, 1971, denying and dismissing plaintiff's complaint, dissolving the temporary restraining order prohibiting defendant from supplying electrical power to the contractor, and granting defendant such right. Plaintiff appeals from this judgment.

The statute controlling defendant's right to furnish electrical power and service to the contractor in the instant case is section 14-502, R.C.M.1947, which provides in pertinent part:

"Purpose. Co-operative, nonprofit membership corporations may be organized under this act for the following purposes:

"(a) For the purpose of supplying electrical energy and promoting and extending the use thereof in *rural areas, in which electrical current and service are not otherwise available, from existing facilities and plants * * *.*" (Emphasis added.)

This statute has previously been construed on numerous occasions by this Court to mean that an electric co-operative cannot furnish service to new customers where an electric utility is ready, willing, and able to serve such customers from its existing facilities and plant. Montana Power Co. v. Fergus Electric Co-op., 152 Mont. 123, 447 P.2d 483; Montana Power Co. v. Fergus Electric Co-op., 149 Mont. 258, 425 P.2d 329; Montana Power Co. v. Park Electric Co-op., 140 Mont. 293, 300, 371 P.2d 1; Sheridan County Elec. Co-op. v. Montana-Dakota Utilities Co., 128 Mont. 84, 270 P.2d 742. What we said in the *Park Electric Co-op.* case is equally applicable here:

"* * * Montana's statute, section 14-502 is more restrictive than any similar statute in other states. *It spells out the limits of the Co-operative service, restricting it to rural areas*

*and where service is not otherwise available from existing facilities and plants.* The Legislature has used restrictive language. The public policy declared is one for the Legislature and not for this court.'' (Emphasis added.)

Did the Montana Power Company have service ''available from [its] existing facilities and plants''? It is beyond cavil that its existing facilities and plant were capable of producing and furnishing the required electrical energy. It was ready, willing, and able to improve its existing six mile transmission line and to extend that line another six miles to deliver such electrical power to the contractor at the construction site at no cost to the contractor or the government. The availability of service from existing facilities and plants cannot be determined solely on the basis of distance between existing transmission lines and the site where electrical energy is to be delivered. Montana Power Co. v. Fergus Electric Co-op., 149 Mont. 258, 263, 425 P.2d 329, 333. There we said:

''We are not establishing distance as the only criteria in determining whether electric service is available from existing facilities and plants. In this case, it is an important fact, but we realize there may be other situations in which it will not be the determining factor.''

In the instant case we have a rural area served both by the utility and the co-operative. We have a new customer who requires electric power and service. We have a utility ready, willing, and able to furnish the required service by improving and extending its existing transmission lines at no cost to the customer. Under such circumstances, the respective distances of the utility's and the co-operative's existing transmission lines from the construction site are not controlling. The required service being available from the utility, the co-operative has no lawful right to serve the customer under section 14-502, R.C.M. 1947.

It is clear that transmission lines are not encompassed within the term ''existing facilities and plants'' in section 14-502. The right of a utility to extend its existing transmission

lines to serve a new customer in a rural area also served by a co-operative is well established. Montana Power Co. v. Fergus Electric Co-op., 152 Mont. 123, 447 P.2d 483; Montana Power Co. v. Fergus Electric Co-op., 149 Mont. 258, 425 P.2d 329; Sheridan County Elec. Co-op. v. Montana-Dakota Utilities Co., 128 Mont. 84, 270 P.2d 742.

We note here that the recent legislative assembly has amended section 14-502 by enactment of the "Territorial Integrity Act of 1971," Chapter 7, 1971 Session Laws, by redefining various terms and spelling out the right to furnish electric service by utilities and co-operatives. The instant case, however, is governed by the provisions of section 14-502, R.C.M.1947, prior to the 1971 amendment.

For the foregoing reasons, the judgment of the district court is reversed and the cause remanded to the district court for entry of judgment granting plaintiff the permanent injunction requested.

MR. CHIEF JUSTICE JAMES T. HARRISON, and MR. JUSTICES DALY, and CASTLES, concur.

MR. JUSTICE JOHN C. HARRISON (specially concurring):

I concur in the holding in this case on the basis of stare decisis only. However, as I stated in my dissent in Montana Power Co. v. Fergus Electric Co-op., 149 Mont. 258, 265, 425 P.2d 329, were it not for the many previous cases in this area, I would hold differently under the fact situation as set forth here.

Except for the fact that the recent legislative assembly amended section 14-502, R.C.M.1947, by the enactment of the "Territorial Integrity Act of 1971," the effect of the majority holding in the instant case, in my opinion, would have been to change the private utility's franchise from what is termed a "nonexclusive franchise" to an "exclusive franchise" within its area of operation.