No. 02-517

IN THE SUPREME COURT OF THE STATE OF MONTANA

2003 MT 320

FREDERICK WEBER and MOOSEWEB CORP.,

Plaintiffs and Appellants,

v.

INTERBEL TELEPHONE COOPERATIVE, INC.,

Defendant and Respondent.

APPEAL FROM:    District Court of the Nineteenth Judicial District,
In and for the County of Lincoln, Cause No. DV-01-61,
The Honorable Michael C. Prezeau, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Ivan C. Evilsizer, Attorney at Law, Helena, Montana (Argued for Appellants)

For Respondent:

Darrell S. Worm, Ogle & Worm, PLLP, Kalispell, Montana (Argued for Respondent)

For Amicus Mid-Rivers Telephone Cooperative, Inc.:

Thomas E. Smith, Moulton, Bellingham, Longo & Mather, P.C., Billings, Montana

For Amicus 3 Rivers Telephone Cooperative, Inc.; Range Telephone Cooperative, Inc.; Blackfoot Telephone Cooperative, Inc.; and Montana Independent Telecommunications Systems:

Michael J. Rieley, Attorney at Law, Helena, Montana
Michael C. Strand, Attorney at Law, Helena, Montana

Orally Argued:  July 10, 2003
Submitted:  July 15, 2003
Decided:  November 24, 2003

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1 Appellants Frederick Weber and Mooseweb Corporation (collectively "Mooseweb") filed a Complaint in Montana's Nineteenth Judicial District Court, Lincoln County, alleging, among other things, that Respondent InterBel Telephone Cooperative, Inc. ("InterBel") acted *ultra vires* by providing dial-up Internet access services to its customers. Mooseweb and InterBel filed cross motions for summary judgment. The District Court granted summary judgment in favor of InterBel and Mooseweb appeals. We affirm the District Court.

¶2 The sole issue on appeal is whether InterBel acted *ultra vires* and exceeded the scope of business authorized for Cooperatives by Montana law by providing dial-up Internet access service.

## BACKGROUND

¶3 InterBel is a Montana corporation organized under the Montana Rural Electric and Telephone Cooperative Act, § 35-18-101, *et. seq.*, MCA. Mooseweb operates an Internet service provider which provides dial-up Internet access to its customers, and is a member of the InterBel Telephone Cooperative. Mooseweb began providing dial-up access in 1996, and now has customers in Lincoln, Flathead, and Lake Counties. InterBel joined the Internet market in 1999, placing itself in competition with Mooseweb for Mooseweb's north Lincoln County customers.

¶4 Mooseweb filed a Complaint against InterBel alleging that InterBel is forbidden by Montana law to provide Internet services, and its actions were thereby *ultra vires*. Mooseweb and InterBel filed cross motions for summary judgment. The District Court granted InterBel's motion and denied Mooseweb's motion, concluding that InterBel's

2

Internet services are not *ultra vires*. Mooseweb appeals from the District Court's Order.

## STANDARD OF REVIEW

¶5 We review a district court's decision granting summary judgment *de novo* and apply the same criteria as a district court. *Minnie v. City of Roundup* (1993), 257 Mont. 429, 431, 849 P.2d 212, 214. Summary judgment is appropriate where the movant shows there are no genuine issues of material fact and the movant is entitled to judgment as a matter of law. *Lemont Land Corp. v. Rogers* (1994), 269 Mont. 180, 183, 887 P.2d 724, 726. The "moving party has the burden of showing a complete absence of any genuine issue as to all facts considered material in light of the substantive principles that entitle the moving party to judgment as a matter of law and all reasonable inferences are to be drawn in favor of the party opposing summary judgment." *Kolar v. Bergo* (1996), 280 Mont. 262, 266, 929 P.2d 867, 869.

## DISCUSSION

¶6 Did InterBel act *ultra vires* and exceed the scope of business authorized for Cooperatives by Montana Law by providing dial-up Internet access service?

¶7 InterBel is a rural telephone cooperative organized under the Montana Rural Electric and Telephone Cooperative Act (the "Act"), which is codified at § 35-18-101, *et. seq.*, MCA. The Act was originally enacted in 1939, and has been amended several times. The purposes for which rural cooperatives may be organized and the powers they may exercise are defined strictly by law. *See Montana Power Company v. Fergus Electric Co-op* (1967), 149 Mont. 258, 262-63, 425 P.2d 329, 332-33. Section 35-18-105, MCA, which identifies permissible purposes for incorporation under the Act, states:

3

Cooperative nonprofit membership corporations may be organized under this chapter:

(1) for the purpose of supplying electrical energy and promoting and extending the use of electrical energy in rural areas, as provided in this chapter;

(2) for the purposes of making generally available adequate telephone service, cable television service, or broadband facilities through the improvement and expansion of existing telephone, cable television, or broadband facilities and the construction and operation of additional facilities as are required to ensure the availability of service to the widest practicable number of users of telephone service, cable television service, or broadband facilities; and

(3) for purposes allowable under federal authorization, including rural economic development activities.

Mooseweb argues that pursuant to § 35-18-105(2), MCA, InterBel is limited to providing "adequate telephone service" and the other services specifically enumerated in the statute, and that its dial-up Internet service, therefore, constitutes an *ultra vires* act.

¶8 It is Mooseweb's position that the plain meaning of the phrase "adequate telephone service," as used in § 35-18-105(2), MCA, proscribes InterBel from providing dial-up Internet access. In its brief, Mooseweb examines dictionary definitions of the words "adequate," "telephone," and "service," and urges us to define it as "basic two-way <u>voice</u> communication on the telephone network, or in other words, ordinary telephone calls that allow private voice conversations between two parties." This proposed definition originates in an affidavit by Mooseweb's founder and owner, Fred Weber. Mooseweb argues that Internet access service is completely different from telephone service. An Internet service provider, it argues, provides a computer data connection to the Internet, which originates on a different network, using different protocols, and different technology, and for a different purpose.

¶9 In response to Mooseweb's proscription argument, InterBel points to recent

4

legislative amendments that ostensibly provide assistance in the interpretation and meaning of "adequate telephone service."  In 1993, the legislature added subsection (3) to § 35-18-105, MCA, permitting cooperatives to be organized "for purposes allowable under federal authorization, including rural economic development activities."  The 1993 legislature also amended § 35-18-106, MCA, to permit cooperatives to engage in activities "authorized under federal law."  Section 35-18-106(1)(l), MCA, now states that a cooperative may "perform all other acts and exercise all other powers that may be necessary, convenient, or appropriate to accomplish the purpose for which the cooperative is organized or authorized under federal law."  InterBel urges that this reference to federal law permissibly draws us to various federal statutes and regulations, specifically the Rural Electrification Act of 1936, that provide a more expansive definition of "telephone service."  Mooseweb counters by relying on other federal statutes and regulations to support its more limited view of the phrase "adequate telephone service."

¶10    Statutory language must be construed according to its plain meaning, and if the language is clear and unambiguous, no further interpretation is required.  *Mattson v. Montana Power Co.*, 2002 MT 113, ¶ 10, 309 Mont. 506, ¶ 10, 48 P.3d 34, ¶ 10.  "When construing a statute, our goal is to ascertain and give effect to the legislative intent.  If the words of the statute are clear and plain, we discern the intent of the legislature from the text of the statute."  *Fliehler v. Uninsured Employers Fund*, 2002 MT 125, ¶ 13, 310 Mont. 99, ¶ 13, 48 P.3d 746, ¶ 13 (citations omitted).  A court's duty when interpreting a statute is "not to insert what has been omitted or to omit what has been inserted."  Section 1-2-101, MCA.

¶11    Unfortunately, the Act does not define "adequate telephone service." In our view the phrase "adequate telephone service" as used in § 35-18-105(2), MCA, is unclear, vague and ambiguous. An examination of the legislative history of § 35-18-105(2), MCA, reveals that the phrase was added to the statute in 1957; however, nothing in the legislative history sheds light on the legislature's intent in enacting the statute to aid us in our interpretation. The legislature, however, provided guidance in our task of interpreting the Act. Section 35-18-103, MCA, states: "This chapter shall be construed liberally. The enumeration of any object, purpose, power, manner, method, or thing shall not be deemed to exclude like or similar objects, purposes, powers, manners, methods, or things."

¶12    After sorting through the arguments in the summary judgment proceeding, the District Court concluded that while the legislature "most likely did not foresee the advent of the World Wide Web and the Internet when it passed subsection (2) in 1957–just as it may not have foreseen fiber optic cable, touch tone dialing, cordless telephones, automatic redial, call waiting, and a hundred other advances–the mandate to liberally construe the Act provides the latitude necessary to permit technological progress, so long as the advances are reasonably related to the business of providing telephone and cable television service." The District Court further determined that the federal government's definition of "telephone service" encompassed "much more than voice communication between telephone handsets." The District Court reasoned that the Internet market was a permissible activity for InterBel to enter.

¶13    We agree with the District Court, although we see no need to venture into federal law for our analysis. The mandate of § 35-18-103, MCA, is clear. Not only did the legislature

6

direct us to liberally construe the Act, it specifically provided, in the second sentence of § 35-18-103, MCA, that, *"[t]he enumeration of any object, purpose, power, manner, method, or thing shall not be deemed to exclude like or similar objects, purposes, powers, manners, or things."* (Emphasis added). This unique statutory guidepost is compelling.

¶14    Nonetheless, Mooseweb contends that Internet services, such as web-site hosting, modems, computer installation, and support are not "like or similar" to "adequate telephone service." Mooseweb points out that the hardware and software associated with computer and Internet access is entirely different than two-way simultaneous voice communication. We cannot accept Mooseweb's narrow view of § 35-18-105, MCA, and its interpretation of "adequate telephone service" when considering the statutory backdrop of § 35-18-103, MCA.

¶15    Rather than focusing on the difference in technologies, we believe the more appropriate inquiry is to examine the purpose or end result of the communication. E-mail has replaced traditional voice communication for many of us; now we routinely communicate with friends, relatives and business associates through electronic mail rather than a telephone call. Fax transmissions over phone lines are commonplace and provide a preferable method of transporting various types of documents. Even voice communication can be transmitted over the Internet. All of this information and data is transmitted over phone lines by means of the dial-up connection. In essence, these new technologies in many instances have replaced the telephone as the instrument of choice.

¶16    In the final analysis, we agree with the District Court and InterBel that dial-up Internet service, albeit not specifically enumerated under § 35-18-105(2), MCA, is sufficiently "like or similar" to telephone service so as to be allowable under the Act. In the

7

words of the District Court, dial-up Internet service is "reasonably related to the business of providing telephone or cable television service."

¶17     We affirm the District Court.


                                        /S/ JIM REGNIER


We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON
/S/ PATRICIA COTTER
/S/ W. WILLIAM LEAPHART
/S/ JOHN WARNER
/S/ JIM RICE

8